AMY v MIC GENERAL INSURANCE CORPORATION
DEPARTMENT OF COMMUNITY HEALTH v MIC GENERAL
INSURANCE CORPORATION
STEWART v STATE OF MICHIGAN
STEWART v MIC GENERAL INSURANCE CORPORATION

Docket Nos. 237055, 237056, 237379, 237380. Submitted July 16, 2003, at
Lansing. Decided August 14, 2003, at 9:00 A.M. Leave to appeal
sought.

Carla K. Amy, the surviving spouse of Douglas K. Amy, brought an
action in the Saginaw Circuit Court against MIC General Insurance
Corporation and State Farm Insurance Company, seeking no-fault
automobile insurance survivor's benefits. The decedent died when
the motorcycle he was driving, with Tammy Sue Stewart as a pas-
senger, struck the rear of a Michigan State Police cruiser that was
stopped in a traffic lane with its emergency lights flashing while
the officer sought to render assistance to the driver of a vehicle
that had become disabled and remained in the traffic lane. The
motorcycle was insured by State Farm, MIC insured the disabled
vehicle, and the state of Michigan is the self-insurer of the state
police vehicle. Stewart also brought an action in the circuit court
against the same insurers, seeking personal injury protection (PIP)
benefits for the injuries she received in the accident. The Michigan
Department of Community Health (MDCH), as subrogee of Stewart,
brought an action in the circuit court against the same insurers,
seeking reimbursement of sums paid for medical care to Stewart
arising from the accident. Stewart also brought a separate action in
the circuit court against the state, seeking PIP benefits. All together,
seven actions were filed in the circuit court wherein Carla Amy,
Stewart, and the MDCH, as subrogee of Stewart, sought PIP benefits
coverage from MIC and the state and the MDCH sought reimburse-
ment from MIC and the state. The actions were consolidated in the
circuit court. The court, William A. Crane, J., denied MIC's motion
for summary disposition after finding that the MIC insured vehicle
was an active link in the chain of events that led to the injuries.
The court also denied the state's motion for summary disposition
on the basis that certain factual issues remained to be resolved.
Following the resolution of factual issues affecting coverage, the
court placed PIP benefit coverage with MIC for the plaintiffs' claims

and relieved the state from liability for the same claims on the basis that the police cruiser held a privileged status pursuant to MCL 257.603 and therefore had not been parked illegally. MIC then entered into a settlement with Stewart and received an assignment of her right to recover from the state. MIC and Carla Amy, while preserving rights to appeal, stipulated the entry of a final judgment on the calculated PIP benefits. Similarly, MIC and the MDCH stipulated the entry of a final judgment on the PIP subrogation claim. Carla Amy, Stewart, and the MDCH appealed, and MIC cross-appealed from the grant of summary disposition in favor of the state. MIC appealed from the grant of summary disposition to the claimants awarding no-fault benefits. The appeals were consolidated.

The Court of Appeals *held*:

1. Six principles guide the determination whether a vehicle is involved in an accident for purposes of no-fault benefit claims.

(1) If the motor vehicle was moving at the time of the accident, a vehicle that actively contributes to either the accident or the injuries sustained is a vehicle involved in the accident.

(2) If the motor vehicle was standing, but not parked, at the time of the accident, the vehicle is involved in the accident if it is a cause of the injuries sustained, or constitutes a hazard or contributing hazard that results in the accident or the injuries sustained.

(3) If the motor vehicle was parked at the time of the accident, the vehicle is involved in the accident if it was parked in such a way as to cause unreasonable risk of the bodily injury that occurred.

(a) A motor vehicle parked in the travel lane or extending into the travel lane of a highway is unreasonably parked because the position of the vehicle in or on the travel lane constitutes a hazard to other users of the highway. While so positioned, the vehicular hazard exerts a present, continuing, and influencing effect on other highway users and therefore is involved in a subsequent accident.

(b) A motor vehicle parked off the roadway and not encroaching or blocking the traveled portion of the highway, or a motor vehicle properly parked in an area designated or intended for parking is not a hazard and, therefore, not involved in a subsequent accident.

(4) If the motor vehicle is parked at the time of the accident, and the injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used, or property being lifted onto or lowered from the vehicle in the loading or unloading process, it is involved in the accident.

(5) If the motor vehicle is parked at the time of the accident, a person injured while occupying, entering into, or alighting from the vehicle suffers accidental bodily injury in a vehicle involved in the accident.

(6) In multivehicle accidents, once it is shown that the bodily injury or damages sustained arose out of the operation, maintenance, or use of a motor vehicle as a motor vehicle, the inquiry regarding other involved motor vehicles examines a broader and active causal nexus to the accident or injuries, including any active influence on other involved vehicles that caused the accident or the injuries.

2. Whether an accident arises out of the use of a motor vehicle as a motor vehicle depends on the characteristics of the use of the vehicle at the time of the accident. Where a parked vehicle is in use, but for a purpose unassociated with its transportation function, it is not being used as a motor vehicle. The parked vehicle exclusion shows a policy that an injury must arise from that use of the parked vehicle that characterizes its function as a motor vehicle.

3. The trial court properly found that there was an insufficient nexus between the maintenance of the vehicle insured by MIC and the injuries resulting from the accident to award no-fault benefits on the theory that the injuries arose out of the maintenance of the vehicle insured by MIC. The injured parties were not entitled to benefits under MCL 500.3105(1) on the theory of maintenance.

4. The trial court properly found that the rear bumper and taillights of the police vehicle were not the type of equipment permanently mounted on a parked vehicle for application of the permanent equipment exception contained in MCL 500.3106(1)(b).

5. Principle 3(a), stated above, applies to this action. Parking a motor vehicle on the traveled portion of the highway is a use of the motor vehicle as a motor vehicle. Such parking is both use of the parked motor vehicle as a motor vehicle and unreasonable. Unreasonable parking equates to being involved in the accident that occurred, and a direct relationship is established between the unreasonable parking and involvement in the accident that occurred. The vehicle insured by MIC created a hazard that directly influenced the state trooper to park on the traveled portion of the highway. The collision with the police cruiser and the injuries to the motorcyclists arose out of the use of a motor vehicle as a motor vehicle. The trial court properly found that the vehicle insured by MIC was involved in the accident within the meaning of MCL 500.3106(1)(a) and 500.3114(5). The plaintiffs are entitled to no-fault benefits.

6. The use of the definite article "the" in MCL 500.3114(5)(a) does not limit the obligation to pay no-fault benefits to the insurer of a single or struck motor vehicle. The insurers of all vehicles involved in a motor vehicle accident with a motorcycle are obligated to share in the payment of no-fault benefits to an injured operator and passenger.

7. Because MCL 257.603 authorized the police vehicle to be parked on the traveled portion of the roadway, the emergency vitiates the otherwise illegality of the parking. However, the reasonableness of the parking is not predicated on legality, but on the risks and hazards created for other users of the highway. The trial court erred in engaging in an indirect analysis of fault in contravention of MCL 500.3105(2) by assessing the legality of the parking of the police vehicle. The status of a parked vehicle as an emergency vehicle does not relieve the insurer of the vehicle from the payment of no-fault benefits to injured claimants. The police vehicle was involved in the accident and the plaintiffs are entitled to no-fault benefits from the state. Because MIC and the state are insurers of vehicles involved in the accident and share the same order of priority, they are obligated to share equally in the payment of no-fault benefits to the claimants. The orders appealed from must be affirmed in part and reversed in part, and the matter must be remanded to the trial court for entry of judgments in accordance with the opinion of the Court of Appeals.

Affirmed in part, reversed in part, and remanded.

1. INSURANCE — NO-FAULT — PARKED MOTOR VEHICLES.

Parking a motor vehicle on the traveled portion of a highway is a use of the motor vehicle as a motor vehicle; such parking is both use of a parked motor vehicle and unreasonable for purposes of the parked vehicle provisions of the no-fault act (MCL 500.3106).

2. INSURANCE — NO-FAULT — PARKED MOTOR VEHICLES — EMERGENCY VEHICLES.

The reasonableness of the parking of an emergency vehicle on the traveled portion of a highway is not predicated on the legality of the parking but on the risks and hazards created for other users of the highway; the status of the vehicle as an emergency vehicle that may legally park on the traveled portion of the highway does not relieve the insurer of the vehicle from liability for the payment of no-fault benefits to persons injured in an automobile accident in which an unreasonably parked emergency vehicle is involved (MCL 257.603, 500.3106).

*Grimaldi, Vary, Pearson & Weyand, P.C.* (by *Richard R. Vary* and *William S. Pearson*), for Carla K. Amy.

*Harvey Kruse, P.C.* (by *Michael J. Guss* and *Louis A. Stefanic*), for MIC General Insurance Corporation.

*Michael A. Cox,* Attorney General, *Thomas L. Casey,* Solicitor General, and *William R. Morris,* Assistant Attorney General, for the Department of Community Health.

*Michael A. Cox,* Attorney General, *Thomas L. Casey,* Solicitor General, and *James T. Farrell* and *Patrick J. O'Brien,* Assistant Attorneys General, for the state of Michigan.

Before: WHITBECK, C.J., and NEFF and DONOFRIO, JJ.

DONOFRIO, J. These consolidated appeals concern the granting of multiple motions for summary disposition in four of seven related and consolidated actions for personal injury protection benefits awarded and denied pursuant to certain sections of the Michigan no-fault automobile insurance law, MCL 500.3106(1)(a), MCL 500.3114(5)(a), and MCL 500.3114(6), following a serious automobile and motorcycle accident that resulted in a death and other serious injuries requiring extensive medical care.

Plaintiff Carla K. Amy, as the surviving spouse of decedent Douglas K. Amy, sought survivor's benefits.[1] Plaintiff Tammy Sue Stewart sought no-fault personal injury protection (PIP) benefits.[2] Plaintiff Michigan

---

[1] MCL 500.3108; MCL 500.3114(5).
[2] MCL 500.3107; MCL 500.3114(5).

Department of Community Health (MDCH), as subrogee of Stewart, sought reimbursement of sums paid for medical care to Stewart arising from the accident.[3] Defendant MIC General Insurance Corporation (MIC) is the insurer of a disabled vehicle involved in the accident and defendant the state of Michigan is the self-insurer of the state police vehicle also involved in the accident.[4]

The claimants, Amy, Stewart, the MDCH, and cross-appellant MIC, appeal as of right a grant of summary disposition in favor of the state denying their claims for no-fault benefits. MIC appeals as of right a grant of summary disposition to the claimants awarding no-fault benefits. The appeals were consolidated. We affirm in part, reverse in part, and remand.

FACTS AND PROCEDURAL HISTORY

The facts are not in dispute in the furtherance of this appeal. On March 26, 1998, Douglas Amy and Tammy Stewart had been at Todd's Bar. Douglas Amy left the bar's parking lot and proceeded north on Dixie Highway in Saginaw County on his Harley-Davidson motorcycle with Stewart as a passenger. Douglas Amy drove only a short distance before striking the rear of a Michigan State Police cruiser stopped in the right northbound travel lane with its emergency lights activated.

At the time of the accident, the police cruiser had stopped to provide assistance to Linda (Cisneros) Jones, whose vehicle had become disabled. The Jones

---

[3] MCL 400.106. Neither the right to, nor the amount of, subrogation is contested.

[4] MCL 257.531; MCL 500.3101(4).

vehicle was insured by MIC. At this particular location, Dixie Highway consists of five lanes. There are two northbound lanes, two southbound lanes, and a center turn lane. There are no shoulders to the roadway. Instead, there is a curb. It is undisputed that when the vehicle became disabled, Jones maneuvered the vehicle into the right lane near the curb. She then turned on her vehicle's emergency warning flashers.

When the state trooper came upon the scene, he stopped behind the disabled vehicle, activated the cruiser's emergency lights, placed the cruiser's transmission in park, and left the police vehicle's engine running. The state trooper advised Jones that he would use the state police car to push her disabled vehicle off the road. The trooper intended to eliminate the hazard created by the disabled vehicle in blocking traffic. Jones was seated behind the steering wheel of her disabled vehicle awaiting a push as the trooper walked back to enter his vehicle to render further assistance. However, before the trooper could enter his vehicle, Douglas Amy's motorcycle crashed into the back of the police cruiser. The force of that crash pushed the police cruiser forward about ten feet, but there was never any contact between the cruiser and the disabled vehicle.

As a result of the collision, Douglas Amy was killed and Stewart sustained significant bodily injury, including amputation of her right leg below the knee, head trauma, and other injuries. Plaintiff-appellee Carla K. Amy (hereafter Amy) is the wife of decedent Douglas Amy. The motorcycle was insured through defendant State Farm Insurance Company for liability and property damage coverage.[5] It was not insured

---

[5] State Farm Insurance Company does not participate in this appeal.

for optional medical benefits allowed under MCL 500.3103(2).

Amy, Stewart, and the MDCH, as subrogee of Stewart, filed various lawsuits for PIP benefit coverage from MIC and the state. Amy filed suit seeking PIP benefits from the state, relative to the police cruiser, as well as from MIC, relative to the disabled vehicle. Stewart filed suit seeking PIP benefits from the state and MIC. The MDCH, having paid most of Stewart's medical expenses, filed suit against MIC and the state.

MIC and the state filed motions for summary disposition. The trial court found that the MIC insured vehicle involved was an active link in the chain of events that led to the injuries, and denied MIC's motion for summary disposition that was predicated essentially on the alleged noninvolvement of the vehicle. The trial court further denied the state's motion for summary disposition because of unresolved factual issues.

After factual development, all the parties except MIC filed motions for partial or full summary disposition to fix liability for PIP insurance claims arising out of the accident. After resolving factual issues affecting coverage, the trial court placed PIP benefit coverage with MIC for plaintiffs' claims and relieved the state from liability for the same claims on the basis of the privileged status of the police cruiser pursuant to MCL 257.603.

Following the trial court's orders, MIC entered into a settlement with Stewart and received an assignment of her rights against the state.[6] By stipulation, includ-

---

[6] MCL 500.3114(6). The state does not challenge the right of MIC to claim reimbursement. The state denies any obligation to pay PIP benefits under the presented facts and, therefore, the entitlement of MIC to recover benefits paid or payable.

ing preservation of rights of appeal, MIC and Amy stipulated the entry of a final judgment on calculated PIP benefits. Similarly, MIC and the MDCH stipulated the entry of a final judgment on the PIP subrogation claim. The appeals and cross-appeals followed.

### STANDARD OF REVIEW

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support of a claim, and the granting of the motion is subject to review de novo.[7] A trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence submitted by the parties. If there is no genuine issue in respect to any material fact, the moving party is entitled to judgment as a matter of law.[8] Where the facts are undisputed, the determination of the applicability of a statute is an issue of statutory construction for the court.[9] Questions involving statutory interpretation are reviewed de novo.[10]

### STATUTORY LAW

This appeal primarily involves the interpretation of two sections of the Michigan no-fault automobile insurance law, MCL 500.3101 et seq.[11]

Section 3106 provides in relevant part:

---

[7] *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998).

[8] *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996).

[9] *Wills v State Farm Ins Cos*, 437 Mich 205, 208; 468 NW2d 511 (1991).

[10] *Smith v Globe Life Ins Co*, 460 Mich 446, 458; 597 NW2d 28 (1999).

[11] Other sections of the statute will be referenced separately in the analysis.

(1) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless any of the following occur:

(a) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.

(b) Except as provided in subsection (2), the injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used, or property being lifted onto or lowered from the vehicle in the loading or unloading process.

## Section 3114 provides:

(1) Except as provided in subsections (2), (3), and (5), a personal protection insurance policy described in section 3101(1) applies to accidental bodily injury . . . .

\*        \*        \*

(5) A person suffering accidental bodily injury arising from a motor vehicle accident which shows evidence of the involvement of a motor vehicle while an operator or passenger of a motorcycle shall claim personal protection insurance benefits from insurers in the following order of priority:

(a) The insurer of the owner or registrant of the motor vehicle involved in the accident.

\*        \*        \*

(6) If 2 or more insurers are in the same order of priority to provide personal protection insurance benefits under subsection (5), an insurer paying benefits due is entitled to partial recoupment from the other insurers in the same order of priority, together with a reasonable amount of partial recoupment of the expense of processing the claim, in order to accomplish equitable distribution of the loss among all of the insurers.

ANALYSIS

I

MIC argues on appeal that its insured motor vehicle was a parked motor vehicle and was neither parked in such a way so as to cause unreasonable risk of the bodily injury that occurred, nor involved in an accident involving a motorcycle and multiple motor vehicles.[12] The claimants, Amy, Stewart, and the MDCH, argue to the contrary and alternatively suggest that the MIC insured vehicle was not a parked vehicle because of its location, or was exempt from the parked vehicle exclusion of § 3106 because the vehicle was being maintained so as to require the payment of no-fault benefits regardless of a § 3106 analysis.[13]

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature.[14] In determining legislative intent, we review the language of the statute.[15] If the statute is unambiguous, the Legislature is presumed to have intended the meaning expressed, and judicial construction is neither required nor permissible.[16] When the words used in a statute allow for alternative and reasonable constructions, a court must look to the

---

[12] No party challenges the status of either the disabled vehicle or the police cruiser as a motor vehicle; therefore, no analysis under MCL 500.3105 is required.

[13] See *Miller v Auto Owners Ins Co*, 411 Mich 633; 309 NW2d 544 (1981).

[14] *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998).

[15] *In re MCI Telecom Complaint*, 460 Mich 396, 411; 596 NW2d 164 (1999).

[16] *Id.*

object of the statute in light of the purpose for which the statute was enacted and apply a reasonable construction that effectuates the Legislature's purpose.[17]

### A. A PARKED VEHICLE AS A MOTOR VEHICLE INVOLVED IN THE ACCIDENT

It is a given in these appeals that the accident in question arose out of the use of motor vehicles as motor vehicles and a motorcycle. The motorcycle driver and his passenger struck the rear of a stopped state police cruiser on a through lane of a highway. Therefore, unless excluded, the motorcycle driver and passenger suffered accidental bodily injury, are entitled to PIP benefits, and the only question is from whom. Under personal protection insurance, an insurer is liable to pay benefits for accidental bodily injury.[18] The liability of the state of Michigan as the insurer of the state police cruiser will be analyzed separately in section III of this opinion. The insurer of the disabled vehicle, MIC, questions any obligation to pay benefits.

The Court has discussed the phrase "involved in the accident" as used in MCL 500.3114(5) in the context of a recoupment cause of action having disputed factual questions.[19] The phrase "involved in the accident" is also found in three other sections of the no-fault act, MCL 500.3113, MCL 500.3115, and MCL

---

[17] *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994); *Chop v Zielinski*, 244 Mich App 677, 680; 624 NW2d 539 (2001).

[18] MCL 500.3105.

[19] *Hastings Mut Ins Co v State Farm Ins Co*, 177 Mich App 428; 442 NW2d 684 (1989); *Greater Flint HMO v Allstate Ins Co*, 172 Mich App 783; 432 NW2d 439 (1988).

500.3125, with attendant discussion by the Court.[20] A phrase that is found in multiple sections throughout the no-fault act should be consistently construed.[21] The issue, whether a vehicle was involved in an accident within the meaning of subsection 3113(b), has consistently been addressed as one of law.[22]

Pursuant to MCL 500.3113, a claimant owner or registrant of an uninsured motor vehicle or motorcycle involved in an accident is precluded from obtaining PIP benefits. Therefore, a denial of benefits has been consistently challenged by claimants on the basis that the uninsured vehicle was not involved in the accident.

*Witt* and *Wright* are cases involving moving vehicles. In *Witt*, the plaintiff was the operator of an insured motor vehicle that was hit head-on by another vehicle and then broadsided by an uninsured motor vehicle that the plaintiff owned. The Court held that the plaintiff's uninsured motor vehicle, as a broadsiding vehicle, was not merely passively involved, but had an active link with the sustained damages.[23] In *Wright*, the plaintiff was operating his uninsured motor vehicle when it ran out of gasoline and stalled. The plaintiff began pushing his vehicle, which was wholly within the lane of traffic, while

---

[20] *Turner v Auto Club Ins Ass'n*, 448 Mich 22; 528 NW2d 681 (1995); *Wright v League Gen Ins Co*, 167 Mich App 238; 421 NW2d 647 (1988); *Stonewall Ins Group v Farmers Ins Group*, 128 Mich App 307; 340 NW2d 71 (1983).

Moreover, a similar phrase is used in MCL 500.3123(1)(b). However, case development, although consistent with the forgoing, is limited in application and, because of its tangential relevance, will not be discussed.

[21] *Wright, supra*, 245.

[22] *Witt v American Family Mut Ins Co*, 219 Mich App 602, 606; 557 NW2d 163 (1996).

[23] *Witt, supra*, 607.

steering through an open driver's side window. An oil tanker struck the plaintiff's vehicle, knocking the plaintiff away from the vehicle. The oil tanker then ran over the plaintiff's leg. The Court held that the plaintiff's uninsured vehicle was an active link in the chain of circumstances causing the plaintiff's injury.[24] The claimants in those cases, Witt and Wright, were precluded from receiving PIP benefits because their uninsured vehicles were involved in their respective accidents.

Before discussing the three uninsured parked motor vehicle cases, we must engage in a general discussion of MCL 500.3106. PIP benefits are payable for accidental bodily injury. However, pursuant to MCL 500.3106, accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless one of three exceptions is met. Generally, (a) the parked motor vehicle was parked in such a way so as to cause unreasonable risk of the bodily injury that occurred, (b) the injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used, or with property being lifted onto or lowered from the vehicle in the loading or unloading process, or (c) the injury was sustained by a person while occupying, entering into, or alighting from the vehicle.[25]

Our Supreme Court in *Miller*,[26] discussed the parked vehicle exclusion and its exceptions as contained in MCL 500.3106.

---

[24] *Wright, supra,* 246.

[25] MCL 500.3106.

[26] *Miller, supra.*

The policy underlying the parking exclusion is not so obvious but, once discerned, is comparably definite. Injuries involving parked vehicles do not normally involve the vehicle *as a motor vehicle*. Injuries involving parked vehicles typically involve the vehicle in much the same way as any other stationary object (such as a tree, sign post or boulder) would be involved. There is nothing about a parked vehicle *as a motor vehicle* that would bear on the accident.

The stated exceptions to the parking exclusion clarify and reinforce this construction of the exclusion. Each exception pertains to injuries related to the character of a parked vehicle as a motor vehicle—characteristics which make it unlike other stationary roadside objects that can be involved in vehicle accidents.

Section 3106(a), which excepts a vehicle parked so as to create an unreasonable risk of injury, concerns the act of parking a car, which can only be done in the course of using the vehicle as a motor vehicle, and recognizes that the act of parking can be done in a fashion which causes an unreasonable risk of injury, as when the vehicle is left in gear or with one end protruding into traffic.

Section 3106(b) recognizes that some parked vehicles may still be operated as motor vehicles, creating a risk of injury from such use as a vehicle. Thus a parked delivery truck may cause injury in the course of raising or lowering its lift or the door of a parked car, when opened into traffic, may cause an accident. Accidents of this type involve the vehicle as a motor vehicle.

Section 3106(c) provides an exception for injuries sustained while occupying, entering or alighting from a vehicle, and represents a judgment that the nexus between the activity resulting in injury and the use of the vehicle as a motor vehicle is sufficiently close to justify including the cost of coverage in the no-fault system of compensating motor vehicle accidents.

Each of the exceptions to the parking exclusion thus describes an instance where, although the vehicle is parked, its involvement in an accident is nonetheless directly related to its character as a motor vehicle. The underlying

> policy of the parking exclusion is that, except in three general types of situations, a parked car is not involved in an accident *as a motor vehicle*. It is therefore inappropriate to compensate injuries arising from its non-vehicular involvement in an accident within a system designed to compensate injuries involving motor vehicles as motor vehicles.[27]

Similarly, in *Lankford*,[28] the plaintiff was involved in an initial motor vehicle accident without receiving injury. He pushed his insured vehicle to the curb, but was unable to push it off the roadway. He put the transmission in "park," turned the engine off, and then walked around to the front of the vehicle to assess the damage. While he was bending over the front of the vehicle, another automobile struck his vehicle from behind, causing the plaintiff's vehicle to lurch forward and hit the plaintiff. As a result of the second collision, the plaintiff suffered injuries. The Court confirmed the plaintiff's entitlement to no-fault benefits because his injuries arose out of the operation and use of a motor vehicle as a motor vehicle. Moreover, the Court stated, "[f]urther, recovery is provided where the vehicle was parked 'in such a way as to cause unreasonable risk of the bodily injury which occurred.' MCL 500.3106(1)(a); MSA 24.13106(1)(a). The . . . vehicle was parked in such a manner because the curb prevented Lankford from pushing the car off the roadway."[29]

The next cases concern uninsured parked motor vehicles and their involvement in their respective

---

[27] *Miller, supra,* 639-641 (emphasis in original).

[28] *Lankford v Citizens Ins Co of America,* 171 Mich App 413; 431 NW2d 59 (1988).

[29] *Id.,* 415-416.

motor vehicle accidents. The plaintiff in *Heard*[30] was at a gasoline pump refueling his uninsured motor vehicle. The vehicle was parked reasonably and the plaintiff was a nonoccupant of the vehicle. He was struck by an approaching motor vehicle and pinned between the two vehicles, resulting in injuries. Although the plaintiff's vehicle was involved in a factual sense, it was not involved in the legal sense for purposes of the no-fault law. Before a parked vehicle can be involved in an accident for purposes of the no-fault law, the criteria of one of the three referenced exceptions to the parked vehicle exclusion must be met. "Those exceptions spell out when a parked vehicle is deemed to be in use as a motor vehicle; '[e]ach exception pertains to injuries related to the character of a parked vehicle *as a motor vehicle*—characteristics which make it unlike other stationary roadside objects that can be involved in vehicle accidents.' "[31] Because the plaintiff's ownership, operation, maintenance, or use of the uninsured parked vehicle did not meet one of the three MCL 500.3106 exceptions, the Court held it would not be considered involved in the accident as a motor vehicle and, therefore, the plaintiff was not precluded from receiving PIP benefits.[32]

In *Braun*,[33] the plaintiff was driving his uninsured automobile on an icy road when he lost control and it went off the road and into a snowdrift. A tow truck pulled the automobile from the snowdrift. However, the automobile was left partially in the traffic lane.

---

[30] *Heard v State Farm Mut Automobile Ins Co*, 414 Mich 139; 324 NW2d 1 (1982).

[31] *Id.*, 144-145, quoting *Miller, supra*, 640 (emphasis added).

[32] *Heard, supra*, 145.

[33] *Braun v Citizens Ins Co*, 124 Mich App 822; 335 NW2d 701 (1983).

The plaintiff, who had been inside his automobile steering it, left the automobile to help replace some towing equipment on the tow truck. The plaintiff left the lights on, the emergency flashers flashing, and the engine running on his automobile. As the plaintiff stood behind the tow truck, a third vehicle struck the plaintiff's automobile and then struck the plaintiff and the tow truck. The plaintiff was pinned between the third party's vehicle and the tow truck. The Court affirmed the trial court's conclusion that the plaintiff's vehicle was unreasonably parked and involved in the motor vehicle accident so as to disqualify plaintiff for PIP benefits.[34]

Similarly, in *Williams*,[35] the plaintiff was driving his uninsured automobile on I-275 when the car stalled, leaving it without mechanical or electrical power. The car was moved to the right shoulder of the highway; however, two to three feet of the car extended into the traveled portion of the right lane. The plaintiff was standing in front of his automobile when a car insured by the defendant insurer struck the portion of the plaintiff's car that extended into the right lane and propelled the vehicle into the plaintiff, causing him bodily injury. The Court concluded, "the trial court did not err in ruling as a matter of law that plaintiff's vehicle 'was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.' Plaintiff's uninsured vehicle was therefore 'involved in the accident,' and plaintiff is not entitled to PIP benefits."[36]

---

[34] *Id.*, 827-828.

[35] *Williams v Allstate Ins Co*, 144 Mich App 178; 375 NW2d 8 (1985).

[36] *Id.*, 181.

MCL 500.3115 provides generally that a person suffering accidental bodily injury while a nonoccupant of a motor vehicle and who is uninsured for purposes of PIP benefits will receive those benefits from the insurers of motor vehicles involved in the accident. In *Stonewall*,[37] a recoupment case, the vehicle insured by the defendant insurer was stopped at an intersection waiting to complete a left turn. The vehicle insured by the plaintiff insurer, approaching from the opposite direction, swerved to avoid hitting the defendant's vehicle and, in so doing, struck and injured a bicyclist. The Court upheld the trial court's finding that the defendant's vehicle was not involved in the accident because the vehicle was not moving into the plaintiff's vehicle's lane, blocking that lane, or doing anything other than having its driver turn its front wheels and activate its turn signal. The Court approved the rationale that there must be an active link, as opposed to a passive link, in the chain of circumstances that somehow contributes to the happening of the accident.[38]

In *Brasher*,[39] two no-fault insurers sought contribution from a third insurer for PIP benefits paid to a pedestrian injured as a result of a multivehicle collision. Vehicles insured by the two claimant insurers collided at an intersection, resulting in one vehicle striking the pedestrian and the second vehicle striking a third vehicle stopped at the intersection awaiting a change in the traffic signal. In seeking partial recoup-

---

[37] *Stonewall, supra.*

[38] *Stonewall, supra,* 309-310.

[39] *Brasher v Auto Club Ins Ass'n,* 152 Mich App 544; 393 NW2d 881 (1986).

ment from the insurer of the third vehicle for the payments made to the pedestrian, this Court stated that

> in order for a vehicle to be 'involved in the accident' within the meaning of MCL 500. 3115(1); MSA 24.13115(1), there must be some activity, with respect to the vehicle, which somehow contributes to the happening of the accident.
>   [The third] vehicle clearly was not involved in the activity contributing to the happening of the accident. [It] was merely stopped at the red light when one of the vehicles involved in the original collision veered and struck his vehicle.[40]

In *Michigan Mut Ins Co*,[41] another recoupment case, the defendant was the insurer of a school bus from which a student disembarked. The school bus was properly stopped with its stoplights flashing. The student crossed in front of the bus and was struck by an oncoming vehicle. The insurer for the vehicle that struck the student paid PIP benefits and sought partial recoupment from the defendant as the insurer of a motor vehicle involved in the accident. The Court held the school bus was not "involved in the accident" under subsection 3115(1)(a) because there was no activity of the bus as a motor vehicle that actively contributed to the student's injuries.[42]

Before turning to MCL 500.3114(5), the final section for consideration is MCL 500.3125. This section regarding property protection insurance benefits follows the general schema for the payment of PIP benefits. A person suffering accidental property damage shall claim property protection benefits from insurers

---

[40] *Id.*, 546 (internal citations omitted).

[41] *Michigan Mut Ins Co v Farm Bureau Ins Group*, 183 Mich App 626; 455 NW2d 352 (1990).

[42] *Id.*, 629-630.

of owners or registrants of vehicles involved in the accident. The seminal case for review is *Turner*.[43] The *Turner* case involved a dispute between no-fault insurers relative to their respective liabilities for property protection benefits for property damage resulting from a multivehicle accident. A thief stole a car insured by Royal Insurance Company of America. A city of Ferndale police officer observed the vehicle and commenced pursuit in a police vehicle. The officer saw a red signal light ahead at an intersection and slowed, hoping the driver would obey the red stoplight. The thief disregarded the red signal light, and a multivehicle accident resulted. The stolen Royal car struck a pickup truck insured by League General Insurance Company and then struck a truck insured by Auto Club Insurance Association (ACIA). The truck broke into two parts and one part crashed into a building located on a corner of the intersection and exploded, and the building and its contents were destroyed by fire. ACIA and League acknowledged their responsibility for property protection benefits as insurers of involved motor vehicles and conceded liability for a one-quarter pro rata share of benefits. Royal and Ferndale (a self-insurer) denied liability on the basis that damages did not arise out of the ownership, operation, or use of their particular insured's vehicle as a motor vehicle under subsection 3121(1). Ferndale denied liability on the basis that its police car was not involved in the accident within the meaning of § 3125 of the no-fault act.

In rejecting the argument based on subsection 3121(1), the Court said that

---

[43] *Turner, supra.*

the section primarily encompasses the threshold require-
ment that claimants must satisfy to be eligible for property
protection benefits: showing that the damage arose out of
"the ownership, operation, maintenance, or use of a motor
vehicle as a motor vehicle . . . ." Once that is established,
the damage fits within the purview of the no-fault statute,
and the claimant is entitled to no-fault coverage. In a single
vehicle accident, the primary liability of the insurer of the
owner of the single vehicle physically connected to the
accident *will* turn on whether the claimant can establish
that the damage arose out of the ownership, operation,
maintenance, or use of the *insured's* vehicle as a motor
vehicle. The claimant is not entitled to coverage unless the
causal nexus is established, and the insured's vehicle is the
only possible vehicle available to demonstrate the required
nexus.

However, in a multivehicle accident, the liability of each
insurer of an owner of a vehicle having some physical con-
nection with the accident *will not* turn on whether the
claimant can establish that the damage arose out of the
ownership, operation, maintenance, or use of *each
insured's* vehicle as a motor vehicle. Section 3121(1) only
requires that the claimant be able to show that the damage
arose out of "the ownership, operation, maintenance, or use
of *a* motor vehicle as a motor vehicle." (Emphasis added.)
Once that showing is made with respect to *one* motor vehi-
cle, the insurers of owners of vehicles having some physical
connection to the accident are potentially primarily liable
for property protection benefits. Whether such insurers in
fact will be found primarily liable will turn on whether any
exceptions for liability exist under § 3123, and whether the
insureds' vehicles were "involved in the accident" under
§ 3125. A vehicle may be "involved in the accident" even
though the damage cannot be said to have arisen out of the
ownership, operation, maintenance, or use of *that* vehicle.[44]

Turning to the phrase, "involved in the accident"
under § 3125, the Court held

---

[44] *Turner, supra*, 34-35 (emphasis in original).

that for a vehicle to be considered "involved in the acci-
dent" under § 3125, the motor vehicle, being operated or
used as a motor vehicle, must actively, as opposed to pas-
sively, contribute to the accident. Showing a mere "but for"
connection between the operation or use of the motor vehi-
cle and the damage is not enough to establish that the vehi-
cle is "involved in the accident." Moreover, physical contact
is not required to establish that the vehicle was "involved in
the accident," nor is fault a relevant consideration in the
determination whether a vehicle is "involved in an acci-
dent." Finally, . . . the concept of being "involved in the
accident" under § 3125 encompasses a broader causal
nexus between the use of the vehicle and the damage than
what is required under § 3121(1) to show that the damage
arose out of the ownership, operation, maintenance, or use
of the motor vehicle as a motor vehicle.[45]

The Court later said:

The meaning that we give to the phrase "involved in the
accident" is also consistent with the structure of the no-
fault act. The sections in the no-fault act that set forth the
"arising out of" standard precede the act's mention of the
"involved in the accident" standard in the case of both PIPs
and property protection benefits. This order of appearance
accords with our view regarding how to properly assess the
liability of an insurer of an owner of a vehicle "involved in
the accident" in multivehicle accident situations. . . .

. . . "The goal of the no-fault insurance system was to pro-
vide victims of motor vehicle accidents assured, adequate,
and prompt reparation for certain economic losses." Our
construction will increase the possibility of "assured" and
"adequate" reparation because the liability of *each* insurer
in a multivehicle accident would not turn on whether the
claimant could establish that the damage arose out of the
ownership, operation, maintenance, or use of that particular
insured's motor vehicle as a motor vehicle, but, rather, on
the broader criterion that the insured vehicle be "involved

---

[45] *Id.*, 39.

in the accident," where the accident arose out of the use of *a* motor vehicle as a motor vehicle. While the causal nexus is more liberal under the "involved in the accident" standard, the standard's requirement that the vehicle be used as a motor vehicle, and that it make an active contribution to the happening of the accident, guarantees that insurers will not be held liable for property protection benefits simply because of a remote association between their insureds' vehicles and the accident. Finally, the standard would facilitate "prompt" reparation of benefits. Because the standard is straightforward in its application, insurers should be less likely to dispute liability among other insurers when their insureds' vehicles were "involved in the accident," and, instead, more likely to pay benefits to eligible victims of motor vehicle accidents in a timely fashion.[46]

Significantly, *Turner* clarifies *Heard*. The "involved in the accident" standard equates to the "arising out of" standard only when assessing whether a parked vehicle is involved in the accident.[47] In other words, the establishment of one of the three exceptions to the parked vehicle exclusion, MCL 500.3106(1) (a), (b), or (c), satisfies the "involved in the accident" requirement of those sections of the no-fault act that so require it for application.

Returning to MCL 500.3114(5), three cases round out the instant analysis. First, in *Bachman*,[48] the plaintiff, Robert Bachman, and his passenger were riders on a motorcycle that collided with a Dodge automobile insured by Progressive Casualty Insurance Company that turned left into the path of the motorcycle. The collision caused the passenger on

---

[46] *Id.*, 40-42 (citations omitted).

[47] *Id.*, 40.

[48] *Bachman v Progressive Cas Ins Co*, 135 Mich App 641; 354 NW2d 292 (1984).

the motorcycle to be ejected and land on a Pontiac automobile insured by Farmers Insurance Group that was stopped in the lane adjacent to the Dodge. The passenger was injured when she landed on the Pontiac. Progressive paid no-fault benefits to Bachman, and Farmers paid one-half benefits to the passenger. Presumably, Progressive paid the other one-half of no-fault benefits. Progressive sought partial recoupment from Farmers for benefits paid to Bachman. The trial court noted that the Pontiac insured by Farmers was not parked, and denied recoupment to Progressive because the Pontiac was not involved in the accident as it related to Bachman within the meaning of MCL 500.3115(1). (The analysis should have followed MCL 500.3114[5] and [6]; however, the analysis is the same.) In affirming, this Court stated that there was no activity on the part of the Pontiac that contributed to the happening of the accident and Bachman's injuries. Therefore, the Pontiac was not involved in the accident for the purposes of the payment of no-fault benefits (for Bachman).[49]

In *Greater Flint HMO*,[50] the plaintiff HMO, as subrogee of Donald and Marjorie McClelland, and the McClellands, riders on a motorcycle, brought actions against Allstate, the insurer of a vehicle driven by Robert Buda for the payment of PIP benefits occasioned by their motorcycle accident. Allstate brought a third-party action against the insurers of vehicles driven by Kirby Hull and Barbara Grossman for partial recoupment as involved motor vehicles in the accident. The action came to this Court on an appeal

[49] *Bachman, supra*, 644.
[50] *Greater Flint HMO, supra*.

of summary disposition granted to the insurers of the
Hull and Grossman vehicles. Summary disposition
was denied to Allstate because a question of fact
remained and the denial was not a subject in the
appeal. A truck ahead of Buda had changed lanes and
started a chain of rear-end collision accidents in front
of Buda that included the Hull and Grossman vehi-
cles. Buda stopped suddenly and did not collide with
the vehicles in front of him. The McClellands were
among a group of motorcyclists riding behind Buda's
vehicle. As the motorcyclists attempted to stop, they
collided with each other and the McClellands were
injured. Because the motorcycles did not hit the Hull
and Grossman vehicles, summary disposition was
granted in favor of the insurers of the Hull and Gross-
man vehicles. This Court ruled that physical contact
was not a consideration in determining if the Hull and
Grossman vehicles were involved in the accident.
Rather,

> [t]he relevant inquiry then is whether a causal nexus can be
> established that would link the injuries incurred in the acci-
> dent to a motor vehicle. Here, the deposition testimony sup-
> ports a reasonable inference that a sudden lane change of
> the lead vehicle, the semitrailer truck, caused every driver
> in the chain of traffic, which included Grossman and Hull,
> to make an emergency stop which contributed to plaintiffs'
> injuries.
>
>     . . . Thus, there remains a question of fact whether the
> Hull and Grossman vehicles in these circumstances were
> sufficiently "involved" in the accident to trigger liability
> under the no-fault act. Accordingly, summary disposition
> was improper.[51]

---

[51] *Greater Flint HMO, supra,* 788-789.

The Court in *Hastings* delivered a similar result and analysis.[52] Hastings Mutual Insurance Company sought partial recoupment for PIP benefits paid from three other insurers of vehicles alleged to be involved in an accident with a motorcycle. In a bench trial, the trial court found four automobiles to be involved in the accident with a motorcyclist and apportioned responsibility for no-fault benefits equally among the four insurers. The Hastings insured vehicle struck the rear of an Auto-Owners Insurance Company insured vehicle that decelerated rapidly in an effort to make a left turn. The Hastings vehicle then crossed into oncoming traffic and was struck by a State Farm Insurance Company insured vehicle. The motorcyclist then struck the Hastings vehicle and a Citizens Insurance Company of America insured vehicle then struck the motorcyclist. The motorcyclist was killed. This Court adopted the "active link" concept introduced in *Stonewall* and further concluded that the vehicles that were not in contact with the motorcyclist actively influenced the Hastings insured vehicle. The trial court was correct in viewing the chain-reaction collisions as a single accident to the extent that all four vehicles were involved in the accident with the motorcyclist.[53]

The fact patterns and court rulings in the cited cases show a consistent similarity on the question whether a motor vehicle was involved in the accident. By combination and extrapolation from the cited rulings, some principles emerge that will assist in the determination whether a vehicle is involved in an

---

[52] *Hastings, supra.*

[53] *Hastings, supra,* 434-435.

accident for purposes of no-fault benefit claims. In assessing whether a motor vehicle is involved in an accident, we proffer the following principles for application.

1. If the motor vehicle was moving at the time of the accident, a vehicle that actively contributes to either the accident or the injuries sustained is involved in the accident.

2. If the motor vehicle was standing, but not parked, at the time of the accident, the vehicle is involved in the accident if it is a cause of the injuries sustained, or constitutes a hazard or contributing hazard that results in the accident or the injuries sustained.[54]

3. If the motor vehicle was parked at the time of the accident, the vehicle is involved in the accident if it was parked in such a way as to cause unreasonable risk of the bodily injury that occurred.

(a) A motor vehicle parked in the travel lane or extending into the travel lane of a highway is unreasonably parked because the vehicle's position in or on the travel lane constitutes a hazard to other users of the highway. While so positioned, the vehicular hazard exerts a present, continuing, and influencing effect on other highway users and therefore is involved in a subsequent accident.

---

[54] By way of example:

1. An inattentive pedestrian at a crosswalk runs into a motor vehicle stopped for a stoplight.

2. A vehicle standing and illegally blocking an intersection resulting in an accident with an intersecting bicyclist or that causes an intersecting vehicle to strike a pedestrian while attempting to avoid the standing vehicle.

(b) A motor vehicle parked off the roadway and not encroaching or blocking the traveled portion of the highway, or a motor vehicle properly parked in an area designated or intended for parking is not a hazard and, therefore, not involved in a subsequent accident.

4. If the motor vehicle is parked at the time of the accident, and the injury was the direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used, or property being lifted onto or lowered from the vehicle in the loading or unloading process, it is involved in the accident.

5. If the motor vehicle is parked at the time of the accident, a person injured while occupying, entering into, or alighting from the vehicle suffers accidental bodily injury in a vehicle involved in the accident.

6. In multivehicle accidents, once it is shown that the bodily injury or damages sustained arose out of the operation, maintenance, or use of a motor vehicle as a motor vehicle, the inquiry regarding other involved motor vehicles examines a broader and active causal nexus to the accident or injuries, including any active influence on other involved vehicles that caused the accident or the injuries.

## B. DEFINING "PARKED"

To avoid the parked vehicle exclusion of MCL 500.3106, appellees Amy and the MDCH alternatively suggest that the MIC insured vehicle was not parked by virtue of its location. They would redefine the term "parked" for purposes of no-fault law.

The term "parked" is not defined in the no-fault act. Courts are to accord statutory words their ordinary and generally accepted meaning.[55] Generally, a vehicle is parked if its wheels cannot move.[56] Parking is a form of stopping.[57] This Court has utilized the definition of "parking" in the Michigan Vehicle Code with respect to no-fault issues. MCL 257.38 provides that "[p]arking means standing a vehicle, whether occupied or not, upon a highway, when not loading or unloading except when making necessary repairs."

Further, this Court has stated that the definitions of "parking" in the code and dictionary are practically equivalent.[58] "Park" is defined as "a setting in an automatic transmission in which the transmission is in neutral and the brake is engaged" or "to leave (a vehicle) in a certain place for a period of time." *Random House Webster's College Dictionary* (1997), p 948. Plaintiff Amy argues that the term "parked" should be by definition limited as a form of standing, specifically, nonmovement *off* the traveled portion of the highway. Nonmovement *on* the traveled portion of the highway should be considered "standing" that is not included in the definition of "parked."

A review of the earlier cited cases reveals that when a motor vehicle was "parked" and occupying the traveled portion of the highway, the vehicle was deemed unreasonably parked. If the vehicle was parked off the roadway, but a portion of the vehicle

---

[55] *Turner, supra,* 27.

[56] *MacDonald v Michigan Mut Ins Co,* 155 Mich App 650, 655; 400 NW2d 305 (1986).

[57] *Bensinger v Happyland Shows, Inc,* 44 Mich App 696, 702; 205 NW2d 919 (1973).

[58] *United Southern Assurance Co v Aetna Life & Cas Ins Co,* 189 Mich App 485, 489; 474 NW2d 131 (1991).

extended into the traveled portion of the highway, the vehicle was deemed unreasonably parked. If the vehicle was parked off the traveled portion of the highway in an area designated for stopping, but illegally parked, the vehicle was deemed reasonably parked.[59]

Whether an accident arises out of the use of a motor vehicle as a motor vehicle depends on the characteristics of the use of the vehicle at the time of the accident. The Court in *Miller* explained the purpose of the parked vehicle exclusion:

> Injuries involving parked vehicles do not normally involve the vehicle *as a motor vehicle*. Injuries involving parked vehicles typically involve the vehicle in much the same way as any other stationary object (such as a tree, sign post or boulder) would be involved.[60]

Even when a parked motor vehicle is in use, but for a purpose unassociated with its transportation function, it is not being used as a motor vehicle.[61] The parked vehicle exclusion shows a policy that an injury must arise from that use of the parked vehicle that characterizes its function as a motor vehicle.

The *Miller* Court went on to state that "[e]ach exception pertains to injuries related to the character of a parked vehicle as a motor vehicle—characteristics which make it unlike other stationary roadside objects that can be involved in vehicle accidents."[62] The developed case law that patterns parking as a condition of the motor vehicle when the wheels will

---

[59] *United Southern, supra,* 491-492; *Wills, supra,* 214-215; *Autry v All-state Ins Co,* 130 Mich App 585, 593; 344 NW2d 588 (1983).

[60] *Miller, supra,* 639.

[61] *McKenzie v Auto Club Ins Ass'n,* 458 Mich 214, 220; 580 NW2d 424 (1998).

[62] *Miller, supra,* 640.

not move marries use of a motor vehicle as a motor vehicle to one of the three exceptions to the parked vehicle exclusion. The stated exceptions form the structure of use as a motor vehicle without further analysis, and thereby enhance the opportunity for prompt reparation of benefits. Therefore, we decline to relegate the determination of the status of a motor vehicle as "parked" to its location on the roadway.

### C. MAINTENANCE EXCEPTION

Amy and the MDCH further argue that the MIC insured vehicle was the subject of maintenance so that plaintiffs are entitled to receive no-fault benefits pursuant to MCL 500.3105(1). Plaintiffs make this argument to avoid the parked vehicle exclusion found in MCL 500.3106(1). There was an historic conflict between subsection 3105(1), the entitlement provision, and subsection 3106(1), the parked vehicle exclusion. Because most maintenance is performed on parked motor vehicles, the latter parked vehicle exclusion would withhold no-fault benefits to those persons injured as a consequence of maintaining the vehicle, while the former entitlement provision would extend no-fault benefits for persons so injured. This Court noted in *McMullen*[63] that *Miller*[64] "resolved this tension by holding that coverage is available for injuries that occur during the maintenance of a parked vehicle."[65] The Court further recognized that the term "maintenance" has been given a liberal construction

---

[63] *McMullen v Motors Ins Corp*, 203 Mich App 102, 104-105; 512 NW2d 38 (1993).

[64] *Miller, supra,* 641.

[65] *McMullen, supra,* 104-105.

because the no-fault act is remedial in nature. A broad definition of maintenance advances the purposes of the no-fault act.[66] While the term "maintenance" suggests the servicing or repairing of a motor vehicle, this Court has expanded the term to include persons injured during preparations for towing a stuck pickup truck,[67] and to nonoccupants injured awaiting a tow truck at the side of the road.[68]

Two potential groups exist as claimants. The first group consists of persons servicing or making repairs on the motor vehicle, persons preparing for servicing or making repairs on the motor vehicle, and those persons awaiting assistance for servicing or making repairs. The second group consists of those bystanders who are directly injured while the motor vehicle is being maintained or repaired, as in *McMullen*. No-fault benefits are payable for accidental bodily injury arising out of maintenance of a motor vehicle as a motor vehicle. The phrase, "arising out of," was examined in *Thornton*.[69] To "arise out of" necessitates a causal nexus between the injury and the motor vehicle use. The causal nexus must be "more than incidental, fortuitous, or 'but for,' " and the vehicle's connection with the injury should be " 'directly related to its character as a motor vehicle.' "[70] If injury arises out of direct maintenance, as happened to the bystander in *McMullen*, the person so injured

---

[66] *Id.*, 106-107.

[67] *Yates v Hawkeye-Security Ins Co*, 157 Mich App 711; 403 NW2d 208 (1987).

[68] *Gentry v Allstate Ins Co*, 208 Mich App 109; 527 NW2d 39 (1994).

[69] *Thornton v Allstate Ins Co*, 425 Mich 643; 391 NW2d 320 (1986).

[70] *Id.*, 659 (citation omitted).

suffers accidental bodily injury and is entitled to no-fault benefits.

Factually, here it was the state trooper's intent to push the MIC insured vehicle from the traveled portion of the roadway to remove the hazard created by the presence of that vehicle. The maneuver to push it off the roadway had not yet commenced. While we question whether the concept of maintenance is implicated under the facts presented, the accident was a function of indirect maintenance at best. We agree with the trial court that there is an insufficient nexus between the MIC insured vehicle and the injuries resulting from the accident to award no-fault benefits on the theory of maintenance.

### D. PERMANENT EQUIPMENT EXCEPTION

The claimants offer an alternative position with respect to the parked vehicle exclusion. They would apply subsection 3106(1)(b), the permanent equipment exception, to the collision between the motor vehicle (police cruiser) and the motorcycle. They argue that because the motorcycle struck the rear bumper and taillights of a motor vehicle, and the rear bumper and taillights were permanently mounted on the vehicle as required, the injury to the motorcyclist was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used. The trial court found that the bumper and taillights were not the kind of equipment the Legislature intended.

Bumpers and taillights are defined as integral parts of a motor vehicle. Were this panel to adopt the argument that "equipment" within the meaning of MCL

500.3106(1)(b) includes structures like bumpers or lights, the exception would swallow up the exclusion and make the exclusion nugatory. It is virtually impossible not to have direct contact with the defined integral parts of a motor vehicle and still have a contact accident. As the Court said in *Miller*, "[t]he stated exceptions to the parking exclusion clarify and reinforce this construction of the exclusion. Each exception pertains to injuries related to the character of a parked vehicle as a motor vehicle—characteristics which make it unlike other stationary roadside objects that can be involved in vehicle accidents."[71]

Adopting plaintiffs' proffered interpretation would unravel the established jurisprudence concerning the parked vehicle exclusion and the no-fault act. For example, in every case where a parked vehicle is reasonably parked so as to exclude the payment of no-fault benefits, in other words the vehicle is like a stationary roadside object, plaintiffs' interpretation would require the payment of no-fault benefits because of contact with a defined and integral part of the motor vehicle. To adopt plaintiffs' interpretation of equipment permanently mounted is to disregard this Court's obligation to effectuate the manifest intent of the Legislature as described in *Miller*.

The MIC insured motor vehicle and the police cruiser were parked on the traveled portion of the highway at the time of the accident. Principle 3(a) as set forth above applies to the instant litigation. Parking a motor vehicle upon the traveled portion of the highway is a use of the motor vehicle as a motor vehicle. Both vehicles occupied the traveled portion of

---

[71] *Miller, supra*, 639-640.

the highway and constituted a hazard to the motor-
cyclists. The MIC insured vehicle created the hazard
and the hazard continued. The hazard created by the
MIC insured vehicle directly influenced the state
trooper to investigate, to park his cruiser on the trav-
eled portion of the highway with its engine and emer-
gency equipment in operation in an effort to mitigate
the hazard, and to then decide to remove the hazard.
Because the travel lane was blocked, Douglas Amy
was required to perceive the obstruction, react to it,
and to navigate around it. Parking a vehicle on the
traveled portion of a highway is deemed both use of
the parked vehicle as a motor vehicle and unreason-
able. Unreasonable parking equates to being involved
in the accident that occurred, and a direct relation-
ship is established between the unreasonable parking
and involvement in the accident that occurred. The
collision with the police cruiser and resultant injuries
to the motorcyclists arose out of the use of a motor
vehicle as a motor vehicle. Therefore, the MIC insured
motor vehicle was involved in the accident within the
meaning of subsections 3106(1)(a) and 3114(5) and
plaintiffs are entitled to no-fault benefits.

II

The priority provision of subsection 3114(5)(a) uses
the definite article "the" in reference to "[t]he insurer
of the owner or registrant of the motor vehicle
involved in the accident." MIC argues that any inter-
pretation of the provision mandates an application in
the singular. MIC argues that, ultimately, "the" motor
vehicle should be interpreted to mean the one motor
vehicle that actually collided with the motorcycle.

Claimants note that subsection 3114(6) provides, "If 2 or more insurers are in the same order of priority to provide personal protection insurance benefits under subsection (5), an insurer paying benefits due is entitled to partial recoupment . . . in order to accomplish equitable distribution of the loss among all of the insurers." Therefore, they argue that subsection 3114(6) modifies subsection 3114(5) for accidents involving more than one motor vehicle and a motorcycle.

· The trial court applied the rationale of *Hastings* to conclude that MIC's argument was without merit. MIC argues that its argument was not considered by the *Hastings* Court and, therefore, *Hastings* does not control. In *Hastings*, a motorcyclist suffered fatal injuries when his motorcycle was involved in an accident with four motor vehicles. Of the four motor vehicles involved, two actually were in collisions with the motorcycle. Citizens and State Farm argued that pro rata sharing or recoupment is not an equitable distribution of loss among insurers. The Court stated:

> We disagree and decline the invitation to put fault back into no-fault.
>
> The common law has held that absent a specific statute or policy provision, when several insurers are each liable for a loss, the insurer who pays is entitled to partial recoupment from the coinsurers on a pro rata basis. The purpose of this rule is to equalize the burden and thus achieve equity:
>
> \*     \*     \*
>
> In the present case, three of the four major auto insurers argue that the custom and practice of the industry is to distribute a loss pro rata when insurers are within the same order of priority. It is asserted that pro rata recoupment

achieves the goal of "equitable distribution of loss," MCL 500.3114(6); MSA 24.13114(6). We agree.

> The equal, pro rata division of responsibility is consistent with the primary purpose of the no-fault act which is the prompt resolution of claims without regard to fault. See *Shavers v Attorney General*, 402 Mich 554, 622-623; 267 NW2d 72 (1978). To assess damages against insurers based upon the percentage of fault of their insureds would subvert the goals of the no-fault act. Delays in paying claims would be occasioned as insurers argued and litigated percentages of fault. An already overburdened Assigned Claims Facility would be forced to pay an increasing number of claims because of factual disputes among insurers concerning their obligations. MCL 500.3172(1); MSA 24.13172(1). Fault would be resurrected as a predominant issue in all multivehicle no-fault cases.[72]

The use of the definite article "the" in subsection 3114(5)(a) suggests a singular construction or focus.[73] Our Supreme Court in *Robinson* was cognizant of the statutory rules of construction provided in MCL 8.3, 8.3a, and 8.3b.[74] Generally, these statutes provide that in the construction of the statutes the rules stated (8.3a and 8.3b) shall be observed, unless such construction would be inconsistent with the manifest intent of the Legislature, all words and phrases shall be construed and understood according to the common and approved usage of the language, and every word importing the singular number only may extend to and embrace the plural number. In the context of *Robinson*, where the definite article was used with "proximate cause" in the governmental immunity statute, the use of the definite article, "is best understood

---

[72] *Hastings, supra*, 436-438 (some citations omitted).

[73] See *Robinson v Detroit*, 462 Mich 439, 458-462; 613 NW2d 307 (2000).

[74] *Robinson, supra*, 461.

as meaning the one most immediate, efficient, and direct cause preceding an injury."[75] However, such a construction with respect to no-fault law is contraindicated.

First, MCL 500.3114(5) provides in the sentence preceding subsection 3114(5)(a) that the claimant shall claim from the "insurers." The statute mandates that the claim be made against insurers. Here the language of the statute is written in the plural. Second, the following subsection, 3114(6), specifically modifies subsection 3114(5) for multivehicle accidents, and the subsection requires the equitable distribution of loss. Third, to impose MIC's interpretation of charging, the insurer of the colliding vehicle would ignore those accidents where contact was absent or the most direct cause was a noncontacting vehicle causing the motorcycle to strike a third vehicle. In such a case, subsection 3114(6) would be rendered nugatory. Fourth, MIC's interpretation smacks of fault, while MCL 500.3105(2) requires the elimination of fault concepts. Further, the MIC interpretation is an invitation to countless litigation in a multivehicle accident claim. Finally, it is appropriate to consider the definite article in the plural as suggested in MCL 8.3b so as to make manifest the intent of the Legislature for prompt reparation of benefits and equitable distribution of loss among insurers.

MIC is the insurer of a motor vehicle involved in an accident with a motorcycle. Regardless of the fact that the MIC insured vehicle was not struck and it was ahead of the vehicle struck, MCL 500.3114(5)(a) is not interpreted to limit the obligation to pay no-fault ben-

---

[75] Id., 459.

efits to the insurer of a single or struck motor vehicle. The insurers of all vehicles involved in a motor vehicle accident with a motorcycle are obligated to share in the payment of no-fault benefits to an injured operator and passenger.

III

On cross-appeal by Amy, joined by MIC and the MDCH, the claimants challenge the state's position that the State Police cruiser, although parked on the traveled portion of the highway, was not involved in the accident because the cruiser was not unreasonably parked. The state claims the cruiser is a privileged motor vehicle authorized to park on the traveled portion of the highway pursuant to MCL 257.603.

The trial court found that the police cruiser was a parked vehicle as a motor vehicle. However, because of its emergency status and the authorization of MCL 257.603 to park on the highway, it was not unreasonably parked. The trial court drew a distinction between a vehicle parked within the traveled portion of the highway and an emergency vehicle rendering assistance and similarly parked with its emergency lights activated. Because the purpose of the positioning of the police cruiser was to make the MIC insured vehicle less hazardous, the trial court concluded that the police cruiser was not unreasonably parked.

The analysis of the MIC insured vehicle as a parked motor vehicle involved in the accident applies equally here. A determination whether a vehicle is parked in such a way so as to cause an unreasonable risk of injury turns on the manner, location, and fashion in which the vehicle is parked. The phrase "unreason-

able risk" examines not the action of the actor in parking the vehicle, but the nature of the risk to unknown third parties, who are thereby put at risk. The standard must be objective and external, and it should be the same for all persons.[76] A vehicle parked on the traveled portion of a highway presents an unreasonable risk of injury.[77]

The risk of injury to others is the focus of the inquiry regarding whether a vehicle is unreasonably parked. The trial court's reliance on MCL 257.603 is misplaced. Section 603 of the Michigan Vehicle Code allows an emergency vehicle to park under circumstances such as these to render assistance irrespective of prohibitions to the contrary. The emergency vitiates the otherwise illegality of the parking. However, the reasonableness or unreasonableness of the parking is not predicated on legality, but on the risks and hazards created for other users of the highway.[78] By assessing the legality of the parking, the trial court engaged in an indirect analysis of fault in contravention of MCL 500.3105(2).

A similar analysis is referenced in *Turner*. In that case involving a police chase resulting in the extension of property protection benefits, the police were privileged to engage in their pursuit of a thief. The Supreme Court, encouraged to create an exception to no-fault liability, said

> the Legislature did not articulate any coverage exception for insured police cars, making it inappropriate for us to create one now. The fact that both the Ferndale [police]

---

[76] *Wills, supra*, 214-215.

[77] *Lankford, supra*, 415-416.

[78] *Wills, supra*, 214-215; *Autry, supra*, 593.

and Royal [Insurance Company] insureds are innocent of any wrongdoing is not grounds for an exemption from no-fault liability in light of § 3121(2)'s direction that property protection benefits are to be paid "without regard to fault." We would violate basic rules of statutory construction if we ignored the Legislature's clear and unequivocal language in this regard.[79]

We therefore hold that the status of a parked motor vehicle as an emergency vehicle that is authorized to park on the traveled portion of the roadway pursuant to MCL 257.603 will not relieve the insurer of the emergency vehicle from the payment of no-fault benefits to injured claimants.

The police cruiser was parked on the traveled portion of the highway at the time of the accident. Principle 3(a), as set forth in section I, applies to the instant litigation. Parking a motor vehicle on the traveled portion of the highway is a use of the motor vehicle as a motor vehicle. Both motor vehicles occupied the traveled portion of the highway and constituted a hazard to the motorcyclists. The police cruiser, although influenced by the MIC insured vehicle and authorized to park on the traveled portion of the highway, extended the hazard and the hazard continued for other users of the highway. Because the travel lane was blocked, Douglas Amy was required to perceive the obstruction, react to it, and navigate around it. Parking a vehicle on the traveled portion of a highway is deemed both use of the parked vehicle as a motor vehicle and unreasonable. Unreasonable parking equates to being involved in the accident that occurred, and a direct relationship is established

---

[79] *Turner, supra,* 36-37.

between the unreasonable parking and involvement in the accident that occurred. Therefore, the police cruiser was involved in the accident within the meaning of MCL 500.3106(1)(a) and 500.3114(5), and plaintiffs are entitled to no-fault benefits from the state.

### CONCLUSION

We find that both MIC and the state are obligated to participate in the payment of no-fault benefits to the claimants because the motor vehicles insured by MIC and the state were involved in a motor vehicle accident involving a motorcycle. Although the motor vehicles were parked, they were parked on the traveled portion of the highway and they were blocking traffic. The blocking of traffic by parking in a through lane constituted a continuing hazard to the extent that when viewed objectively with regard to the nature of the risk to the claimants, the risk of bodily injury that occurred was unreasonable and, therefore, the subsequently occurring accident arose from the use of a parked vehicle as a motor vehicle within the meaning of the no-fault act. In light of this conclusion, pursuant to MCL 500.3114(6), because MIC and the state share in the same order of priority, they are obligated to share equally in the payment of no-fault benefits to the claimants.

We affirm in part, reverse in part, and remand to the trial court for entry of judgments in accordance with this opinion. We do not retain jurisdiction.