**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED OCTOBER 26, 2004**

**TAMMY SUE STEWART,**

　　**Plaintiff-Appellee,**

**and**　　　　　　　　　　　　　　　　　　**No. 124676**

**CARLA K. AMY,**

　　**Plaintiff-Appellee,**

**v**

**STATE OF MICHIGAN,**

　　**Defendant-Appellant.**

_____

**PER CURIAM.**

　　The issue presented in this appeal is whether, under the parked vehicle provisions of the no-fault act, MCL 500.3106(1), a police cruiser that is parked at least partially on a roadway, for the purpose of aiding a stalled vehicle and with its emergency lights flashing, presents an *unreasonable* risk of bodily injury, such that the state may be held liable under the no-fault act.  The Court of Appeals concluded that a disabled vehicle that had come to

rest in the right-hand lane of a highway and a state police cruiser that stopped behind it were both vehicles parked in such a way as to cause an unreasonable risk within the meaning of MCL 500.3106(1)(a). We reverse the portion of the Court of Appeals decision pertaining to the state police cruiser.[1]

I

The facts are not in dispute. On March 26, 1998, at about 8:20 p.m., Linda Jones was operating an automobile in a northbound lane of Dixie Highway in Saginaw County. In the area where Jones was driving, Dixie Highway is a five-lane road (two southbound lines, two northbound lines, and a middle turn lane) with a speed limit of forty-five miles an hour. A state police trooper at the scene described the area as well lit. A curb runs along the edge of the highway; there is no shoulder.

After her vehicle stalled, Jones maneuvered it into the right lane. She activated the vehicle's flashers. Another driver saw her and stopped behind her to offer help. A state trooper came upon the scene, and he stopped

---

[1] The only appeal before us is that filed by the state of Michigan on behalf of the state police. This opinion does not address liability issues related to the disabled vehicle.

2

his police cruiser behind the other two vehicles. The trooper activated his cruiser's emergency lights and the driver-side spotlight. The trooper placed his police cruiser in park, got out of his cruiser, and talked to Jones and the other driver. After the other driver left, the trooper decided that he would try to use his cruiser to push Jones's vehicle off the road.

As the trooper was returning to his cruiser, a motorcycle operated by Douglas Amy, and with Tammy Sue Stewart as a passenger, approached the scene from behind. The motorcycle struck the rear of the police cruiser with considerable force. Amy was killed, and Stewart was seriously injured. Stewart had no insurance of her own, and many of her medical bills were paid by Medicaid.

Numerous lawsuits were filed in the Saginaw Circuit Court and the Court of Claims seeking no-fault benefits from the insurer of the vehicle driven by Ms. Jones and from the state of Michigan, as the self-insurer of the state police cruiser. Carla Amy, the widow of Douglas Amy, sought to recover survivor's benefits. MCL 500.3108. Stewart sought to recover first-party personal protection insurance (PIP) benefits. MCL 500.3107; MCL 500.3114(5). The Michigan Department of Community Health (MDCH), acting as the collection agent for Medicaid, sought to recover

3

amounts paid for Stewart's medical care.  This appeal concerns the potential liability of the state of Michigan arising from the involvement of the police cruiser.

The circuit court determined that the police cruiser was a parked vehicle, within the meaning of MCL 500.3106, at the time of the accident and that the parked cruiser did not cause an unreasonable risk of bodily injury within the meaning of MCL 500.3106(1)(a).[2]  Accordingly, the circuit court granted the state's motion for summary disposition under MCR 2.116(C)(10).[3]

The Court of Appeals agreed that the police cruiser was a parked vehicle.  However, the Court concluded that, although the cruiser was legally parked under MCL 257.603,[4]

---

[2] MCL 500.3106(1)(a) provides:

Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless any of the following occur:

(a) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.

[3] As for the disabled vehicle, the circuit court found that it was also a parked vehicle, but that it posed an unreasonable risk.

[4] MCL 257.603(3), part of the Michigan Vehicle Code, provides:

(continued…)

4

it posed an unreasonable risk by virtue of the fact that it was parked on the traveled portion of the highway. *Amy v MIC Gen Ins Corp*, 258 Mich App 94, 133-136; 670 NW2d 228 (2003). The Court therefore reversed the circuit court's summary disposition ruling in favor of the state.

## II

This is an appeal from a decision on a motion for summary disposition, which we review de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). The underlying question before this Court is whether under § 3106(1) the police cruiser, which was parked on the roadway for the purpose of aiding a stalled vehicle and with its emergency lights flashing, presented an *unreasonable* risk of bodily injury. When "the facts are undisputed, the determination of whether an automobile is parked in such a

---

(continued…)
  The driver of an authorized emergency vehicle may do any of the following:

   (a) Park or stand, irrespective of this act.

   (b) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation.

   (c) Exceed the prima facie speed limits so long as he or she does not endanger life or property.

   (d) Disregard regulations governing direction of movement or turning in a specified direction.

way as to create an unreasonable risk of bodily injury within the meaning of § 3106(1)(a) is an issue of statutory construction for the court." *Wills v State Farm Ins Cos*, 437 Mich 205, 208; 468 NW2d 511 (1991). We likewise review such statutory construction issues de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

## III

A no-fault insurer is responsible for paying first-party PIP benefits "for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . ." MCL 500.3105(1). For purposes of this appeal, the parties agree that the police cruiser was "parked" at the time of the accident. Under the no-fault act, accidental bodily injury "does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle . . . ," MCL 500.3106(1), except in the three situations set forth in MCL 500.3106(1)(a), (b), and (c). Relevant to this case is the first of these exceptions:

> The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred. [MCL 500.3106(1)(a).]

6

Contrary to the reasoning of the Court of Appeals, the statutory language in MCL 500.3106(1)(a) that is at issue (i.e., a vehicle may be parked in such a way "as to cause unreasonable risk . . .") recognizes that there are degrees of risk posed by a parked vehicle. The statutory language does not create a rule that whenever a motor vehicle is parked entirely or in part on a traveled portion of a road, the parked vehicle poses an unreasonable risk. In each case cited by the Court of Appeals it was determined that the vehicle involved posed an unreasonable risk (because it was parked partly or entirely on the traveled portion of a road). But that does not mean that the same result must necessarily obtain in a situation such as this, in which the parked vehicle was a police cruiser performing emergency services. Indeed, we find that the police cruiser in this case was not parked in such a fashion as to pose an *unreasonable* risk. We have no doubt that the cruiser posed a risk to other northbound vehicles and their occupants, and we have no doubt that, as the Court of Appeals said, the operator of the motorcycle had to perceive, react to, and navigate around the police cruiser. But none of this answers the question whether the parked police cruiser constituted an *unreasonable* risk.

The policy underlying the parked vehicle exclusion was explained in *Miller v Auto-Owners Ins Co*, 411 Mich 633, 639-641; 309 NW2d 544 (1981):

> Injuries involving parked vehicles do not normally involve the vehicle *as a motor vehicle*. Injuries involving parked vehicles typically involve the vehicle in much the same way as any other stationary object (such as a tree, sign post or boulder) would be involved. There is nothing about a parked vehicle *as a motor vehicle* that would bear on the accident.
>
> The stated exceptions to the parking exclusion clarify and reinforce this construction of the exclusion. Each exception pertains to injuries related to the character of a parked vehicle as a motor vehicle—characteristics which make it unlike other stationary roadside objects that can be involved in vehicle accidents.
>
> Section 3106(a), which excepts a vehicle parked so as to create an unreasonable risk of injury, concerns the act of parking a car, which can only be done in the course of using the vehicle as a motor vehicle, and recognizes that the act of parking can be done in a fashion which causes an unreasonable risk of injury, as when the vehicle is left in gear or with one end protruding into traffic.
>
> * * *
>
> Each of the exceptions to the parking exclusion thus describes an instance where, although the vehicle is parked, its involvement in an accident is nonetheless directly related to its character as a motor vehicle. The underlying policy of the parking exclusion is that, except in three general types of situations, a parked car is not involved in an accident *as a motor vehicle*. It is therefore inappropriate to compensate injuries arising from its non-vehicular involvement in an accident within a system designed to compensate injuries involving motor vehicles as motor vehicles. [Emphasis in original.]

As even the Court of Appeals recognized, factors such as the manner, location, and fashion in which a vehicle is parked are material to determining whether the parked vehicle poses an unreasonable risk.[5] In this case, a police cruiser was parked in a travel lane, but it was parked in an area that was well lit, with its emergency lights flashing, with its spotlight on, and it was parked there for the purpose of providing necessary emergency services to a stalled vehicle that itself posed a risk of bodily injury. The stalled vehicle ahead of it also had its flashing lights on. The speed limit was forty-five miles an hour. Moreover, there was another northbound lane available, and the middle turn lane was potentially available for other vehicles to use. There is nothing in the record to suggest that an oncoming northbound driver would not have ample opportunity to observe, react to, and avoid the hazard posed by the police cruiser. In short, we find that the parked police cruiser in this case did not pose an *unreasonable* risk within the meaning of MCL 500.3106(1)(a).

---

[5] 258 Mich App 133-134.

## V

The Court of Appeals decision is reversed to the extent it holds that the police cruiser was parked in such a way as to cause an unreasonable risk within the meaning of MCL 500.3106(1)(a). The circuit court's order of summary disposition in favor of the state of Michigan, as the self-insurer of the state police cruiser, is reinstated.

> Maura D. Corrigan
> Michael F. Cavanagh
> Elizabeth A. Weaver
> Marilyn Kelly
> Clifford W. Taylor
> Robert P. Young, Jr.
> Stephen J. Markman