KELLY, J.
odissenting). Today the Court reaches the extraordinary conclusion that food is not always necessary for an injured person’s care. The Court concludes that food is “completely unrelated to [an injured person’s] ‘care, recovery, or rehabilitation’ ” if provided in a home, although it is both necessary and reimbursable if provided in an institution. Ante at 536.
I disagree. The Court of Appeals decision that reached the opposite conclusion twelve years ago, Reed v Citizens Ins Co of America,[1] was correct and should not be overturned. It is obvious to me that food should continue to be an allowable expense under the no-fault act wherever provided as long as reasonably necessary to an injured person’s care.
THE NO-FAULT ACT
We review issues of statutory construction de novo. Stewart v Michigan, 471 Mich 692, 696; 692 NW2d 376 (2004). In construing statutes, our purpose is to determine and implement the intent of the Legislature. Sanders v Delton Kellogg Schools, 453 Mich 483, 487; 556 NW2d 467 (1996).
*543 The act under review here was passed to provide benefits for victims of motor vehicle accidents without regard to who was at fault. Substituting for certain tort remedies that it abolished, the act created a comprehensive and expeditious benefit system through insurance. Shavers v Attorney General, 402 Mich 554, 579; 267 NW2d 72 (1978). This Court has determined that the Legislature intended the no-fault act to be construed liberally in favor of the insured.[2] Turner v Auto Club Ins Ass’n, 448 Mich 22, 28; 528 NW2d 681 (1995).
MCL 500.3105(1)
In this case, Mr. Griffith was injured in an automobile accident that rendered him unable to care for himself. He remains injured. Therefore, without contest, he satisfies the requirement of § 3105(1), and his insurer must pay him benefits. The issue here involves the meaning of “benefits.”
Section 3105(1) requires:
Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter.
On its face, this section requires an insurer to pay benefits to its insured injured in a motor vehicle accident. The Legislature took pains to define at a different section of the statute what benefits must be paid. MCL 500.3107(l)(a).[3] As the majority observes, § 3107(l)(a) *544 is “the statutory provision at the center of this case.” Ante at 527. Because the Legislature defined “benefits” in § 3107(l)(a), it seems contradictory that it would have given “benefits” a different definition in § 3105(1).
Yet, the majority reads § 3105(1) to mean that the only benefits that a no-fault insurer is liable to pay are those “causally connected to the accidental bodily injury . . . .” Ante at 531. It is not Mr. Griffith’s injury, it reasons, that occasioned his need for food. Hence the cost of his food is not a covered expense.
The majority finds that § 3105 limits the benefits made available in § 3107, despite the fact that the courts have never before found such a limitation. The majority defines “for” in the phrase “an insurer is liable to pay benefits for accidental bodily injury” as meaning “ ‘with the object or purpose of,’ ” “ ‘intended to belong to or be used in connection with,’ ” and “ ‘suiting the purposes or needs of.’ ” Ante at 531 n 6. (Citation omitted.) From that it concludes that these definitions “imply” that the benefit an injured party seeks must be directly caused by the injury. Not only is the majority’s reading of § 3105 novel and unprecedented, it flies in the face of our time-honored determination to liberally construe the no-fault act for the benefit of the insured.
*545 The word “for” in the English language has many nuances in its meaning. I feel confident that the Legislature added § 3107(l)(a) for the purpose of defining “benefits” in § 3105. On the basis of that belief, I find that the definition of “for” in § 3105 that best accords with the Legislature’s intent is “by reason of.” Random House Webster’s College Dictionary (2001). Hence, § 3105 should be read to mean that benefits are payable “by reason of” accidental bodily injury.
Reading § 3105 in this way ensures that the only limitations placed on “benefits” for an insured injured in an auto accident are those clearly stated by the Legislature in § 3107. My belief is that, if the Legislature intended that the sole benefits payable for an insured’s injury were those directly arising therefrom, it would have said so. Also, it would not have required at § 3107 payment for so broad a category as “all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person’s care, recovery, or rehabilitation.”
Additionally, the majority’s reading of the act is irrational. The majority believes that food provided in the hospital qualifies as a benefit under the act. However, under its reading of § 3105, food would be excluded: the need for it does not arise from the injury. The majority explains that, in an institution, one has little choice what food is served. But it fails to explain how that fact transforms hospital food into an expense arising from an accident.
If the Legislature had intended, for example, that ground beef be compensable only if no other entrée were offered, it should have written something to make that clear. The majority will search in vain for some indication in the act that food, or any item, can qualify for “benefits for an accidental bodily injury” if fur *546 nished in the hospital but not at home. Absolutely nothing in either § 3105 or § 3107 allows for that distinction.
The difficulty the majority has in providing a convincing answer to this question illustrates the weakness of its conclusion. Its reading of § 3105 is, at its foundation, unsound. The majority criticizes my analysis of § 3105(1) as inadequate and undeveloped. Ante at 532, n 7. It would be inadequate only if I agreed with the majority’s choice to create two requirements where there is only one in § 3105.1 have taken my own analysis of § 3105(1) to its logical conclusion. It is not the same analysis as the majority’s, but it is more faithful to the text of the statute. Contrary to Justice CORRIGAN’S belief, I have set forth a principled basis for my analysis. It includes a plain-language reading of §§ 3105(1) and 3107(l)(a).
MCL 500.3107(l)(a)
The majority finds that Douglas Griffith fails to qualify not only under § 3105(1) but also under § 3107(l)(a). In construing § 3107(l)(a), first it goes to the dictionary to interpret the meaning of “care.”
As is frequently the case, here a dictionary alone does not clarify the Legislature’s intent. “Care” has several definitions. The majority chooses “protection” or “charge” as the appropriate one. But the word can also be defined as “the provision of what is necessary for the welfare and protection of someone or something.” Compact Oxford English Dictionary.
It is clear that, when consulting a dictionary in performance of the interpretative task, one is normally required to make a choice among several definitions. It *547 is nothing less than a pretense to maintain that, in enforcing a statute “as written,” a court does not make definitional choices.
The language of § 3107(l)(a) is broad. Yet, the majority ultimately limits the meaning of “care” to the care needed for recovery and rehabilitation, ascribing to it a restorative meaning. The logical consequence of using this restrictive definition demonstrates that it is poorly chosen. It reads “care” out of the sentence. Given that “recovery and rehabilitation” are in the sentence with “care,” the effect of the majority’s choice of definitions turns “care” into a mere redundancy. This approach violates our obligation when interpreting statutes to try to give every word meaning and treat no word as surplusage. Altman v Meridian Twp, 439 Mich 623, 635; 487 NW2d 155 (1992).
My reading of the statute gives independent meaning to the word “care.” Under the doctrine of noscitur a sociis, the meaning of questionable words may be ascertained by reference to the meaning of other words associated with it. Applying this doctrine, “care” fits with “recovery” and “rehabilitation” when “care” is interpreted broadly to mean “the provision of what is necessary for the welfare and protection of someone.” The Legislature intended that an injured person’s needs be furnished (“care”) until “recovery” has been accomplished through “rehabilitation.”
In some cases, such as where a motorist is catastrophically injured, recovery and rehabilitation may not be an achievable goal. In these cases, the Legislature requires that the injured individual receive all products and services reasonably necessary for his or her continuing care. The act’s comprehensive language demonstrates the Legislature’s intent to ensure *548 that benefits are provided in every instance where a motorist suffers injury.
THE LEGISLATURE’S INTENTION WITH RESPECT TO FOOD
It is difficult to deny that food is a product reasonably necessary for the care of an invalid, however narrowly “care” is defined. Without nourishment, an injured person could not be restored to health and could not properly be cared for. In fact, without it, a person’s physical well-being would be immediately threatened. A finding that food is necessary for “care” accords with the purpose of the no-fault act: to provide benefits needed by someone injured in an automobile accident.
There is a limitation on those benefits in the act: all benefits reasonably necessary. Given the wide variety of circumstances under which injured parties seek no-fault benefits, the act provides for wide latitude in determining what benefits are reasonably necessary in a given situation. Unfortunately, the majority limits the wide latitude provided by the Legislature by restrictively reading the word “care.”
It is noteworthy that the Legislature did not expressly limit the expenses recoverable in no-fault cases to those that the injured person did not require before the injury. It could have included, but did not, a clause such as “benefits are payable except for those that were reasonably necessary for the care of the person before the injury.” It is the majority, not the Legislature, that writes this limitation into the act.
The majority concludes that food is not necessary for the care of Mr. Griffith because he requires food, injured or not. It adds that food has nothing to do with an injured party’s “care, recovery, or rehabilitation.” It *549 further reasons that food is not an allowable expense when consumed in the home, although it is an allowable expense in an institution.[4]
This is not a reasonable construction of the statutory language. Nothing in the language of the no-fault act indicates that whether a home-based expense is allowable depends on whether an uninjured person has the same expense. The act’s language mandates that the appropriate question is whether the injured person reasonably incurred the questioned expense as part of his or her care, recovery, or rehabilitation.
The logic in the majority’s reasoning is, charitably speaking, illusory. If an automobile accident victim is hospitalized, the reasonable cost of his or her food is a covered expense under § 3107(l)(a). If another automobile accident victim requires the same care, but receives it at home, the reasonable cost of his or her food likewise should be a covered expense under § 3107(l)(a).
I agree with-Justice BOYLE’s partial concurrence in Manley v Detroit Automobile Inter-Ins Exchange,[5] and the Court of Appeals decision in Reed: no principled distinction justifies a holding that, where a patient is institutionalized, food is a reasonably necessary expense, but if he or she is home receiving the same care, it is not. Moreover, the plain language of the no-fault act makes no such distinction.
The majority claims that its ruling is necessary to keep down the cost of no-fault insurance. However, the *550 record contains no evidence to support that claim. There is nothing to indicate that no-fault insurance has become unaffordable because of in-home food expenses that insurers until now have been required to provide to catastrophically injured policyholders.[6]
The facts of Mr. Griffith’s case illustrate the complexity of the issue before us and why the Legislature could not have intended the interpretation made by the majority. Mr. Griffith is receiving one hundred percent institutional care, albeit in a home setting. He resides in his own home and is being cared for solely by medical professionals, his wife having been placed in a nursing home.
Thus, family members play no role in cooking for Douglas Griffith or in providing his food. There is no evidence that his meals differ in any respect from those he earlier received in the hospital. Because food in both settings is necessary for his care, both should be compensable under the act.
The only distinction between Mr. Griffith’s hospital care and his in-home care is the location at which he receives it. The language of the no-fault act does not *551 limit expenses only to those incurred in a hospital setting. This is a new rule created by the Court.
The majority attempts to buttress its interpretation by asserting that it has discerned the policy choice made by the Legislature. It insists that my reading is my own policy choice that cannot be accurate unless the Legislature amends the no-fault act. This is a logical fallacy that assumes the majority’s conclusion as its premise.
Also faulty is the majority’s assertion that my reading of the statute “essentially invent[s] a new entitlement system.” Ante at 537 n 13. To the contrary, my reading of the statute conforms with the law as interpreted-for at least the past twelve years.
The Court of Appeals made the same application. While the majority’s accusations and appeal to cost concerns create a rhetorical flourish, it is the majority, and not I, that advocates a drastic change in established law.
Let there be no mistake in this: motorists, required to purchase no-fault insurance in order to drive in Michigan, now have one less resource available to them because of the majority’s restrictive reading of the no-fault act. The majority holds that food, as a matter of law, is never reasonably necessary for one’s care, recovery, or rehabilitation outside a hospital, at least absent a special diet.
A proper reading of the text belies the majority’s conclusions. There is no need to require the Legislature to amend its decision that all expenses should be covered as long as reasonably necessary to an injured person’s care, recovery, and rehabilitation.
FURTHER IMPLICATIONS OF THE MAJORITY’S DECISION
The majority forces a harsh dilemma on insured individuals injured in automobile accidents: remain in *552 an institution, if insurance coverage is available, or convalesce at home where they or others are burdened with the cost of their food. Unfortunately for impoverished families, the only choice may be to remain in institutional care.[7]
Reed has been the rule of law in Michigan for twelve years. There are unacknowledged alarming implications in overruling it. If we apply the majority’s reasoning about in-home food, is shelter at home an allowable expense? An uninjured person requires shelter. The majority incentivizes no-fault insurers to refuse to reimburse these and other expenses in the future, even though they are without dispute reasonably necessary for an injured person’s care.
The majority opines that reimbursement for in-home food is a form of wage-loss benefits. However, it is unable to substantiate that statement with a showing that any legislation equates wage-loss benefits with payment for care of the injured. Wage-loss benefits exist to replace lost income, not as reimbursement for expenses incurred.
Furthermore, the no-fault act limits wage-loss benefits to three years. But the insurer’s obligation to provide for the care of an injured person can extend over the person’s lifetime. Therefore, equating the provision of food with wage loss is inaccurate. The Legislature struck a very definite compromise on the duration of wage-loss' benefits that stands in contrast to the lifetime care to which an injured person is entitled.
*553 The majority[8] finds that §§ 3105 and 3107 “impose two separate and distinct requirements” before expenses are compensable under the act. It finds that Mr. Griffith’s expenses for in-home food fail to satisfy the requirements of both sections. They fail to satisfy § 3107 because they were not necessary for his care. They fail to satisfy § 3105 because they were not caused by the accidental bodily injury.
The majority informs us that Mr. Griffith’s food, when provided in the hospital, did satisfy § 3107. Are we to infer that the hospital food was nonetheless not a reimbursable expense because it did not satisfy § 3105?[9] Clearly, the food was not an expense caused by the accidental bodily injury when furnished either in the hospital or at home.
Finally, the majority makes no provision for those who in the past have incurred ongoing expenses and assumed ongoing burdens in reliance on the availability *554 of reimbursements for in-home food. Because its holding is not limited to new cases, many whose caregivers are already receiving reimbursement for in-home food may be forced to return to institutional settings.
CONCLUSION
The majority’s conclusion is that food is unnecessary to one’s “care, recovery, or rehabilitation” outside an institution, although necessary inside an institution. It makes a distinction without a difference. Not only is it illogical, no statutory basis exists to distinguish the reimbursability of the cost of institutional food from the reimbursability of the cost of in-home food.
I would affirm the trial court and the Court of Appeals decisions and leave Reed intact. Regardless of the choice of meanings ascribed to the word “care,” the Legislature’s intent had to be that food is an allowable expense for injured automobile accident victims convalescing at home.
CAVANAGH, J., concurred with KELLY, J.

 198 Mich App 443; 499 NW2d 22 (1993).

 The majority’s decision today, taking food as it were from the mouth of the injured insured convalescing at home, is anything but a liberal construction in his favor.

 In pertinent part, MCL 500.3107 provides:
[P]ersonal protection insurance benefits are payable for ...
*544 (a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services, and accommodations for an injured person’s care, recovery, or rehabilitation. .. .
(b) Work loss ....
(c) Expenses ... reasonably incurred in obtaining ordinary and necessary services in lieu of those that, if he or she had not been injured, an injured person would have performed....

 The majority claims a distinction exists where an injured person is required to eat hospital food because his or her injuries require treatment in a hospital. This ignores the closely related situation presented in this case. A catastrophically injured individual remains injured and continues to require institutional treatment, but does not necessarily require the treatment in a hospital or long-term care facility.

 425 Mich 140, 168; 388 NW2d 216 (1986).

 The majority claims that my interpretation of the statute is based on policy considerations. But, in this case, I base my interpretation on the language found in the no-fault act. The Legislature has already made the policy decision. My construction of the statute is in accordance with that decision. Nonetheless, policy considerations are frequently appropriate. Certainly, the decision in this case has numerous policy implications. For example, the majority appears concerned that no-fault costs be kept low. This is a policy concern. In that regard, I fail to see why my interpretation of the law, which has prevailed at least since 1993, would increase current no-fault premiums. One would expect that no-fault providers have been factoring the potential for these costs into their premiums for years. Perhaps this state’s drivers can expect that their premiums will decrease in response to the majority’s opinion today. After all, Michigan drivers will no longer be entitled to the same level of benefits that they have paid for in premiums during the past twelve years.

 Interestingly, although the majority expresses its concern that costs for insurers be minimized, its decision arguably helps to increase those costs. In the future, the care of patients who remain institutionalized during the period they once might have returned home is likely to be more expensive.

 Ante at 530.

 After quoting both statutory provisions relevant to the present analysis, the majority concludes that hospital food remains a covered expense. But merely quoting the statutory language does not resolve the question.
According to the majority, an injured person’s food is not “for” an accidental bodily injury because the need for food was not caused by the automobile accident. By the majority’s logic, even one who is hospitalized is not entitled to food expenses because those expenses are as necessary to an uninjured person as to an injured person. This logic is equally applicable regardless of the injured person’s physical location.
Contrary to the majority’s assertion, I do not express policy concerns about allowing recovery for food expenses in a hospital, but not for the same costs at home. Rather, my concern is the lack of a logical basis for the distinction the majority seeks to create. Instead of the majority’s artificial distinction, I would apply the clear language of § 3107(l)(a) and allow recovery for products reasonably necessary to “an injured person’s care, recovery, or rehabilitation.” I would not decide, as the majority does, that as a matter of law at-home food expenses are never reasonably necessary to one’s care, recovery, or rehabilitation.