# STATE OF MICHIGAN

# COURT OF APPEALS

---

JAMIE PIKE,

Plaintiff-Appellant,

v

FARM BUREAU MUTUAL INSURANCE
COMPANY OF MICHIGAN,

Defendant-Appellee.

UNPUBLISHED
November 27, 2018

No. 336455
Wayne Circuit Court
LC No. 16-000062-NF

---

SYNERGY SPINE AND ORTHOPEDIC
SURGERY CENTER, LLC,

Plaintiff-Appellant,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

Defendant-Appellee.

No. 337192
Wayne Circuit Court
LC No. 16-013029-NF

---

Before: TUKEL, P.J., and BECKERING and SHAPIRO, JJ.

TUKEL, P.J. (*concurring in part and dissenting in part*).

I concur with the majority's analysis with respect to the dismissal of plaintiff Synergy Spine and Orthopedic Surgery Center's claim in Docket No. 337192 on the basis of our Supreme Court's decision in *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 196; 895 NW2d 49 (2017). However, because I think the majority is interpreting the no-fault act's "involved in the accident" phrase too narrowly, I respectfully dissent with respect to plaintiff Pike's claims in Docket No. 336455. Accordingly, I would affirm the trial court.

-1-

# I. STANDARDS OF REVIEW

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *By Lo Oil Co v Dep't of Treasury*, 267 Mich App 19, 26; 703 NW2d 822 (2005). Decisions on such a motion are reviewed de novo. *Id*. at 25.

> In evaluating a motion for summary disposition brought under Subrule (C)(10), a reviewing court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. Summary disposition is properly granted if the proffered evidence fails to establish a genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. [*Shinn v Mich Assigned Claims Facility*, 314 Mich App 765, 768; 887 NW2d 635 (2016) (quotation marks and citation omitted).]

This Court reviews the interpretation and application of statutes, rules, and legal doctrines de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). Further, "[t]he issue whether a vehicle was involved in an accident within the meaning of [MCL 500.3113(b)] has been consistently addressed as one of law." *Witt v American Family Mut Ins Co*, 219 Mich App 602, 606; 557 NW2d 163 (1996).

# II. DISCUSSION

MCL 500.3113 of the no-fault act, MCL 500.3101 *et seq*., provides in pertinent part the following:

> A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:
>
> * * *
>
> (b) The person was the owner or registrant of a motor vehicle . . . involved in the accident with respect to which the security required by section 3101 or 3103 was not in effect.

Thus, "the owner of an uninsured motor vehicle is not entitled to personal protection insurance benefits for bodily injury resulting from an accident involving that vehicle." *Ardt v Titan Ins Co*, 233 Mich App 685, 689; 593 NW2d 215 (1999). Conversely, "the owner of an uninsured vehicle *is* entitled to recover PIP benefits if [her] uninsured motor vehicle is *not* 'involved in the accident.' " *Heard v State Farm Mut Auto Ins Co*, 414 Mich 139, 145; 324 NW2d 1 (1982).

Our Supreme Court has noted that while the phrase "involved in the accident" is used several times in the no-fault act, the phrase is not defined in the act. *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 37; 528 NW2d 681 (1995). In construing the phrase, "[w]hether a vehicle is 'involved' cannot be determined by abstract reasoning or resort to dictionary definitions." *Id*. (quotation marks and citation omitted). Instead, "[i]t depends on the meaning derived from the

purpose and structure of the no-fault act." *Id.* (quotation marks and citation omitted). The *Turner* Court went on to hold that

> for a vehicle to be considered "involved in the accident" . . . , the motor vehicle, being operated or used as a motor vehicle, must actively, as opposed to passively, contribute to the accident. Showing a mere "but for" connection between the operation or use of the motor vehicle and the damage is not enough to establish that the vehicle is "involved in the accident." Moreover, physical contact is not required to establish that the vehicle was "involved in the accident," nor is fault a relevant consideration in the determination whether a vehicle is "involved in an accident." [*Id.* at 39.]

Where multiple vehicles are involved, this Court analyzes each vehicle separately to determine whether the vehicle at issue had "any active influence on other involved vehicles that caused the accident or the injuries." *Amy v MIC Gen Ins Corp*, 258 Mich App 94, 122; 670 NW2d 228 (2003), rev'd in part on other grounds sub nom *Stewart v Michigan*, 471 Mich 692; 692 NW2d 376 (2004).

Plaintiffs contend that, even accepting Pike's testimony as true,[1] there is insufficient evidence to show that her Malibu, which was being driven by Coates at the time, was involved in the accident. I disagree.

Plaintiffs main argument, which the majority accepts, is that because the Malibu was not moving at the time of the accident, it cannot be said that it "actively, as opposed to passively, contribute[d] to the accident." *Turner*, 448 Mich at 39. However, although "a vehicle which is motionless in a lawful position is less likely to be considered involved," *Dep't of Social Servs v Auto Club Ins Ass'n*, 173 Mich App 552, 557; 434 NW2d 419 (1988), that does not preclude such a conclusion. I agree with defendant that "although stationary at the time of the accident, [Pike's Malibu which Coates was driving] was being operated on a public road and at an intersection as part of a course of conduct in which it was plainly being used as a motor vehicle." Although motionless, Pike's stalled-out Malibu *actively* contributed to the accident by preventing Pike, driving Coates's Monte Carlo, from moving through the intersection.

This situation is distinguishable from the Supreme Court case plaintiffs rely on, *Utley v Mich Mun Risk Mgmt Auth*, 454 Mich 879 (1997). In *Utley*, the parties stipulated to the following facts before trial:

> The accident occurred on May 7, 1990, at approximately 7:30 a.m. Martin Sowa, a City of Sterling Heights employee, was driving a city-owned pickup truck on

---

[1] As the majority notes, Pike testified that her Malibu (while driven by Jeffrey Coates) stalled out in front of her (as she was driving Coates's car) while stopped at a traffic-light intersection. When the light changed to green, Pike was "not able to go" because of the stalled vehicle in front of her, so she "sat" and "waited." Consequently, Pike was rear-ended by a Dodge Ram pickup truck while she was sitting at the green light.

Eighteen Mile Road. Sowa was forced to come to a stop as he approached Utica Road. Plaintiff, who was riding a motorcycle, was behind Sowa's truck. Plaintiff looked down at his speedometer. When he looked up again, plaintiff noticed the stopped truck and applied his brakes. Plaintiff lost control of his motorcycle, which fell on its side and slid toward the truck. [*Utley v Mich Mun Risk Mgmt Auth*, unpublished per curiam opinion of the Court of Appeals, issued April 26, 1996 (Docket No. 173391), p 2.]

The Supreme Court reversed this Court's judgment that the stopped truck was "involved" in the accident. *Utley*, 454 Mich at 879. However, unlike in *Utley*, where the stopped truck was stopped "in the normal course of driving," *Utley*, unpub op at 2, the Malibu in this case was not stopped "in the normal course of driving." Indeed, the Malibu's stalling caused it to block traffic when traffic otherwise would have been unimpeded. This is a critical distinction. Thus, although here and in *Utley* the vehicles were stopped at intersections, the truck in *Utley* was doing nothing other than what was expected in the normal course of driving. The Malibu on the other hand had stalled and was blocking traffic from its normal progress, which falls outside "the normal course of driving." This type of behavior, while technically "stationary," nonetheless qualifies as "actively" contributing to the accident. There is no doubt that Coates's car, which Pike was driving, was involved in the accident when it was rear-ended. Pike's car, which was stopped in front of Coates's car, thus had an "active influence on other involved vehicles that caused the accident or the injuries," *Amy*, 258 Mich App at 122, because its stalling impeded traffic, which led to Coates's car being struck. That active influence as to Coates's car rendered Pike's car "involved in the accident" for purposes of the statute.

Our Supreme Court's opinion in *Turner* further supports my analysis. In *Turner*, a police car was chasing a stolen vehicle that later ran through a red-light intersection, resulting in a multivehicle collision. *Turner*, 448 Mich at 25-26. The Court held that the police car, although it did not touch any other car, was nonetheless involved with the accident. *Id.* at 42. The Court explained, "This active use [of the police vehicle] *perpetuated* the stolen vehicle's flight, which, in turn, *resulted* in the collision with the other cars and the damage to the nearby property." *Id.* (emphasis added). Thus, the Supreme Court determined that the police vehicle was involved with the accident because it was an active *cause* of the accident, which went beyond a mere but for causation.

Therefore, I would hold that there was an "active link" between Pike's injury and her vehicle. *Id.* at 39. Her vehicle had stalled in the middle of traffic, blocking the normal flow of traffic, which resulted in the ensuing accident. Contrary to the majority's view, I am not introducing or relying on "fault" in my analysis. It is not Pike's or Coates's fault that the Malibu stalled out where it did—it was, as far as the evidence shows, uncaused and unintended by the actions of either driver. But like the Supreme Court in *Turner*, I am considering causation that goes beyond a mere a "but for" causation. See *id.* Notably, this is not a situation where a legally parked car was struck in an accident; in that situation it is clear that the parked car would be

entirely "passive" and would not have actively caused the accident.[2]  See, e.g., *Heard*, 414 Mich at 144

Accordingly, Pike's testimony shows that her uninsured vehicle, which was being driven by Coates at the time, actively contributed to the accident, which would preclude Pike from receiving PIP benefits, MCL 500.3113(b).  Therefore, I would affirm the grant of summary disposition in favor of defendant.

/s/ Jonathan Tukel

---

[2] To illustrate the flaw in the majority's analysis, I raise a hypothetical with slightly different facts than presented with here.  Assume the Malibu had stalled *in the middle of the intersection*, instead of before the intersection.  If a car travelling in the other road (i.e., the road crossing the road the Malibu had been travelling on) swerved to avoid hitting the stalled Malibu and in the process struck another vehicle, it seems the majority would conclude that the Malibu would not be involved with that accident as well.  This would be an entirely illogical outcome in my view, as the Malibu, albeit stationary, *actively* disrupted the normal flow of traffic, which led to the accident.