*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

REBEKKA REYES, Personal Representative of the
ESTATE OF BRUNO WOLFGANG KNUIRA,

        Plaintiff-Appellant,

v

UNKNOWN INSURANCE COMPANY and
MICHIGAN ASSIGNED CLAIMS PLAN,

        Defendants-Appellees.

UNPUBLISHED
January 28, 2025
11:49 AM

No. 368865
Wayne Circuit Court
LC No. 23-001823-NF

Before: BORRELLO, P.J., and N. P. HOOD and YOUNG, JJ.

PER CURIAM.

In this case involving a dispute regarding entitlement to personal protection (PIP) benefits, plaintiff, Rebekka Reyes as the personal representative of the Estate of Bruno Wolfgang Knuira, the decedent, appeals as of right the trial court's order granting defendant Michigan Assigned Claims Plan's ("MACP") motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). We affirm in part, reverse in part, and remand for the trial court to apply all of the factors in *Stewart v State*, 471 Mich 692, 698; 692 NW2d 376 (2004) to determine whether decedent's car was parked in a way to create an unreasonable risk.

## I. BACKGROUND

This case arose from a traffic collision that occurred at night. Decedent was driving his car when it stalled in the middle of Inkster Road in Dearborn Heights. Decedent thought his car's battery died because the lights were out and got out of the car to look for jumper cables in the trunk. A bystander drove by and noticed decedent's stalled car. The bystander pulled over in front of decedent's car in the left lane, turned on the hazard lights in his own car, grabbed a flashlight, and headed to where decedent was standing to help direct northbound traffic around decedent and his vehicle. A Cadillac appeared in the left lane on the roadway heading toward decedent. The bystander tried to warn decedent before stepping out of the way of the Cadillac, but the Cadillac collided with decedent and the rear of decedent's car. Decedent did not survive the collision.

Police officers spoke with the bystander and at-fault driver. The at-fault driver informed officers she had one drink an hour earlier, was 90 years old, and was not wearing her glasses.

Decendent's estate (hereinafter "Plaintiff"), filed a claim with the MACP seeking PIP benefits for "reasonable and necessary services," and filed a complaint shortly after seeking those benefits. MACP moved for summary disposition under MCR 2.116(C)(10) after initial discovery, arguing decedent was ineligible for PIP benefits because decedent did not maintain security on his car. MACP argued decedent's car was involved in the accident and the parked vehicle exception was inapplicable because decedent's car was parked in a way that caused an unreasonable risk. MACP further argued decedent was required to maintain the security on his car even if his car was not moving at the time of the collision.

Plaintiff contended there was a genuine issue of material fact regarding whether decedent was parked in a way that caused an unreasonable risk. Plaintiff cited the bystander, lighting on the roadway, and the at-fault driver's alleged intoxication as evidence decedent was not parked in a way that caused an unreasonable risk. Plaintiff argued decedent did not need to maintain security on his car because his car was disabled, and decedent did not expect or intend to drive his car at the time of the collision. Further, plaintiff argued decedent did not need security because decedent was a pedestrian at the time of the collision.

The trial court determined there were three issues: (a) whether decedent was a pedestrian, (b) whether the car was required to have security, and (c) whether the parked vehicle exception applied. The trial court concurred with MACP that there was no genuine dispute on all three issues, finding decedent was not a pedestrian, the car was required to have security, and his car was parked in a way that created unreasonable risk such that the parked vehicle exception did not apply. The trial court granted MACP's motion for summary disposition and dismissed the case. Plaintiff moved for reconsideration, which the trial court denied. This appeal followed.

## II. STANDARDS OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *BC Tile & Marble Co v Multi Bldg Co, Inc*, 288 Mich App 576, 583; 794 NW2d 76 (2010). "In making this determination, the Court reviews the entire record to determine whether defendant was entitled to summary disposition." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). The trial court granted summary disposition under MCR 2.116(C)(10), which "tests the factual sufficiency of a claim." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (emphasis omitted). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden* 461 Mich at 120. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 224; 911 NW2d 493 (2017) (quotation marks and citation omitted).

"When reviewing a decision on a motion for summary disposition, this Court will not consider evidence that had not been submitted to the lower court at the time the motion was decided." *In re Estate of Rudell*, 286 Mich App 391, 405; 780 NW2d 884 (2009). "The reviewing court should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposition to the motion." *Maiden*, 461 Mich at 121. "These issues turn on questions of statutory interpretation, which we review de novo." *Saugatuck Dunes Coastal Alliance v Saugatuck Twp*, 509 Mich 561, 577; 983 NW2d 798 (2022).

## III. SUMMARY DISPOSITION

Plaintiff argues the trial court erred when it determined there was no genuine dispute of material fact that decedent: (a) was not a pedestrian at the time of the collision, (b) was required to maintain security on his car, and (c) the parked vehicle exception did not apply. We disagree in part and agree in part.

## A. DECEDENT WAS NOT AN OCCUPANT OF A VEHICLE

Plaintiff argues the trial court erred when it determined decedent was not a pedestrian at the time of the collision. "The purpose of the no-fault act, MCL 500.3101 *et seq*., is to ensure the compensation of persons injured in automobile accidents." *Allstate Ins Co v State Farm Mut Auto Ins Co*, 321 Mich App 543, 552; 909 NW2d 495 (2017) (quotation marks and citation omitted). "[A] person who suffers accidental bodily injury while not an occupant of a motor vehicle shall claim personal protection insurance benefits under the assigned claims plan." MCL 500.3115. Both parties and the trial court hone in on whether the decedent was a "pedestrian." It is true that our case law has held that someone who is a pedestrian at the time of an accident is entitled to benefits. See *Heard v State Farm Mut Auto Ins Co,* 414 Mich 139, 146; 324 NW2d 1 (1982). The plain language of the statute, however, requires only that a person not be an occupant of a vehicle.

The trial court determined decedent was not a pedestrian because decedent was "not traveling by foot at the time of the accident, but was standing outside his inoperable vehicle in the middle of the road." While it may be true that decedent was not a pedestrian, he also was not an occupant of his vehicle at the time of the accident. Our Supreme Court has held that an individual outside their automobile, tending to their trailer, is not an occupant of the vehicle under MCL 500.3115. *Rohlman v Hawkeye-Security Ins Co*, 442 Mich 520, 523; 502 NW2d 310 (1993). Here, decedent was not an occupant of his vehicle because he was outside his vehicle accessing his trunk. *Id*. at 532 ("[W]e conclude that plaintiff was not an occupant of the van because he was not physically inside the van when the accident occurred.").

Consequently, the trial court erred when it determined there was no genuine dispute of fact that decedent was not a pedestrian. *El-Khalil*, 504 Mich at 160. The opposite is true—there is no genuine dispute of fact that decedent was not an occupant of a vehicle at the time of the accident. This does not end the inquiry as to whether decedent is eligible to recover PIP benefits. If decedent's vehicle was involved in the accident and he failed to maintain security on the same, he cannot recover benefits.

B.  DECEDENT'S VEHICLE WAS UNINSURED AND INVOLVED IN THE ACCIDENT

MACP contends that because decedent's car was involved in the collision and was uninsured[1], this excludes decedent from PIP benefits under MCL 500.3113(b).  We agree with MACP.

MCL 500.3113(b) states, in relevant part:

A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:

* * *

(b) The *person was the owner* or registrant *of a motor vehicle* or motorcycle *involved in the accident* with respect to which the security required by section 3101 or 3103 was not in effect.

It is undisputed that decedent, as the car's owner, did not maintain the security required for his car and, as such, decedent should be barred from receiving PIP benefits.  *Dep't of Transp v Nat'l Interstate Ins Co*, 331 Mich App 112, 121; 951 NW2d 113 (2019) (quotation marks and citation omitted) ("For a vehicle to be considered involved in the accident under § 3125, the motor vehicle, being operated or used as a motor vehicle, must actively, as opposed to passively, contribute to the accident.").  However, if the vehicle involved in the collision was a "parked vehicle," it may still be entitled to PIP benefits.  Specifically, the parked vehicle exception is established in MCL 500.3106(1)(a),[2] which states:

---

[1] Plaintiff argues that security need not have been maintained on decedent's vehicle because the vehicle could not be "driven or moved" under MCL 500.3101(1) as its battery was dead.  This Court has held "the driving period in MCL 500.3101(1) refers to any time the owner of the vehicle *expects and intends* the vehicle to be driven or moved on a highway on demand." *Graves v Collier*, 335 Mich App 14, 21; 966 NW2d 229 (2020) (emphasis added).  While it is true decedent's car was disabled, decedent had recently been driving his car and expecting to drive his car until it began to stall, as evidenced by his car stopping in the middle of the roadway.  Further, the police report indicated decedent was trying to restart his car with jumper cables, meaning decedent still had the intention to drive his car moments later.

[2] On the record at the hearing on MACP's motion for summary disposition, the trial court wrongly stated that under the parked vehicle exception, if a car was parked so as to create an unreasonable risk of bodily injury, and accidental bodily injury results, PIP benefits *would still* be available to the operator of the parked vehicle.  Though it does not change our analysis of the trial court's decision to grant summary disposition, we must note for the trial court that MCL 500.3106(1)(a) states when a vehicle is parked in such a way, the operator *is not* entitled to PIP benefits.  Counsel for MACP also corrected the trial court, clarifying an operator would only be entitled to PIP benefits if the vehicle was legally parked.

(1) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless any of the following occur:

(a) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.

"Each of the exceptions to the parking exclusion thus describes an instance where, although the vehicle is parked, its involvement in an accident is nonetheless directly related to its character as a motor vehicle." *Stewart v State*, 471 Mich 692, 698; 692 NW2d 376 (2004). The legislature sought to allow recovery of PIP benefits where the involved parked vehicle was "involve[d] . . . in much the same way as any other stationary object (such as a tree, sign post or boulder) would be involved." *Id*. The Court considered the "manner, location, and fashion in which a vehicle is parked" to determine whether that vehicle "poses an unreasonable risk." *Id*. In addition, and seemingly for the first time in the parked car jurisprudence, the Court also considered the "purpose" of the vehicle being parked in a potentially risky manner.

MACP argues that the manner in which decedent's vehicle was parked created an unreasonable risk. MACP relies on *Wright v League Gen Ins Co*, 167 Mich App 238; 421 NW2d 647 (1988),[3] arguing *Wright* shares identical facts with this case. In *Wright*, the motorist was coasting on the road with the emergency lights on because his car ran out of gasoline. While the motorist was still in his car, a truck approached behind him and both vehicles stopped at a red light. The motorist exited his car at the light and began pushing the car in order to get it off the road and onto a side street. When the traffic light turned green, the truck accelerated, struck the rear of the car, and ran over the motorist's leg. *Id*. at 240. This Court held the motorist was not entitled to PIP benefits because his car was involved in the accident and did not fall within the parked vehicle exception:

> [The motorist]'s car was an "active link" in the chain of circumstances causing the [truck] to drive over his leg. . . . [The motorist] [] began pushing his vehicle, which was wholly in the lane of traffic, while reaching in the driver's side window to steer. When his vehicle was struck in the rear, the impact pushed the vehicle forward which knocked [the motorist] away from the vehicle and onto the ground where the [truck] ran over [his] leg. We find [the motorist] was "involved in the accident" and that such interpretation gives effect to the intent of the Legislature, which is to deny benefits to those whose uninsured vehicles are involved in accidents. [*Id*. at 246.]

However, given that the car in question in *Wright* was in motion, it was also more clearly not a parked vehicle. *Id*. at 243-244 ("We agree that under these facts plaintiff's car was not 'parked,'

---

[3] "A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule." MCR 7.215(J)(1).

thus rendering § 3106 inapplicable. We conclude that logic dictates that a moving vehicle is not 'parked,' nor is it akin to stationary objects.").

We addressed the involvement of a stalled car in a collision in *Williams v Allstate Ins Co*, 144 Mich App 178; 375 NW2d 8 (1985). In *Williams*, the plaintiff's uninsured car stalled on the right shoulder of a highway and did not have any lights on. *Id*. at 179-180. While being in the right shoulder, "two or three feet of the car extended into the traveled portion of the right lane." *Id*. The plaintiff was standing in front of his car when the defendant struck the plaintiff's car resulting in injury to the plaintiff. *Id*. at 180. This Court stated: "Since [the] plaintiff's vehicle was not insured under the no-fault act, [the] plaintiff is not entitled to collect PIP benefits from [the] defendant if his motor vehicle was 'involved in the accident.' " *Id*., quoting MCL 500.3113(b). This Court determined that the plaintiff's car was involved in the collision because it was stalled with no lights and protruding into traffic. *Williams*, 144 Mich App at 181. In *Williams*, the plaintiff's car was "disabled" however, it only partially entered the lane of traffic and still this Court held it was parked in a way that caused unreasonable risk. *Williams*, 144 Mich App at 181. However, as addressed above, *Williams* was decided before *Stewart* which seemed to add the consideration of the "purpose" of the parked vehicle.

In this case, the trial court stated that "the decedent's vehicle being stopped in a lane of traffic at night with no hazard lights was parked so as to create an unreasonable risk of bodily injury." It is clear then that the trial court considered the "manner, location, and fashion" of decedent's vehicle and not the purpose or explanation as to why decedent's vehicle was parked in such a way. *Id*. Because the trial court's analysis is incomplete, it must determine under the proper standard whether there remains a genuine dispute of material fact as to whether decedent's car was parked in a way that caused unreasonable risk.

## IV. CONCLUSION

We affirm the trial court's conclusion that decedent should have maintained security on his car, and reverse the trial court's conclusions on whether decedent was an occupant of the vehicle. We remand for further analysis as to whether decedent's car was parked in a way to cause unreasonable risk using the *Stewart* factors. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Noah P. Hood
/s/ Adrienne N. Young